53 A.3d 1210

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. JOSEPH SCHUBERT, JR., DEFENDANT–RESPONDENT.

Argued May 7, 2012—Decided October 22, 2012.

296

*Brian J. Uzdavinis,* Deputy Attorney General, argued the cause for appellant (*Jeffrey S. Chiesa,* Attorney General of New Jersey, attorney).

*Philip A. De Vencentes* argued the cause for respondent (*Galantucci & Patuto,* attorneys).

Judge WEFING (temporarily assigned) delivered the opinion of the court.

This appeal presents the question of whether a trial court may amend a judgment of conviction after a defendant has finished serving the sentence imposed upon him to include a provision erroneously omitted at the time of sentencing that increases the punitive consequences of that sentence. We conclude that it may not and thus affirm the judgment of the Appellate Division. The question arises in the following factual context.

## I.

In 1996, a grand jury returned a four-count indictment against defendant Joseph Schubert, Jr., charging him with criminal restraint, a crime of the third degree, *N.J.S.A.* 2C:13–2(a); official misconduct, a crime of the second degree, *N.J.S.A.* 2C:30–2(a); sexual assault, a crime of the second degree, *N.J.S.A.* 2C:14–2(c)(1); and trespass, a crime of the third degree, *N.J.S.A.* 2C:18–3(a). The indictment was based upon the allegation that defendant, who at the time was a New York City policeman and was evidently spending some time at the New Jersey shore, had engaged in sexual intercourse with C.M. without her consent.

In 2000, defendant agreed to enter a negotiated plea of guilty to the charge of sexual assault. In return, the State agreed to dismiss the remaining charges and to recommend both that defendant be sentenced as if he had pled to a crime of the third degree and that he receive a noncustodial period of probation. Defendant executed the plea form and two additional forms containing questions, one titled "For Sexual Offenses" and the other titled "Additional Questions for Certain Sexual Offenses." When defendant

entered his guilty plea, the State represented to the trial court that it had discussed the matter at length with the victim and that the proposed resolution was satisfactory to her.

Defendant acknowledged as part of the plea colloquy that he understood he would be examined at the Adult Diagnostic and Treatment Center located in Avenel, New Jersey. The trial court also asked defendant if he understood that he would have to "register with the chief law enforcement officer in the community [in] which you reside," and defendant said he did. Defendant also acknowledged he understood that he would need to provide verification of his address every ninety days. Those exchanges were the extent of the colloquy between defendant and the trial court with respect to the potential consequences of pleading guilty to sexual assault.

Defendant appeared for sentencing on June 16, 2000. The trial court noted that the Avenel report did not indicate compulsive or repetitive behavior. The court found that the mitigating factors clearly outweighed the aggravating factors and that the terms of the plea bargain were appropriate. It placed defendant on probation for a period of three years, imposed the appropriate penalties, ordered restitution of certain medical expenses as well as payment of a monthly probationary fee, and directed defendant to maintain full-time employment. The trial court then made the following statement:

> If you do all those things, you are not going to have a problem with this court. I don't anticipate any problem from you. I don't anticipate this probation is going to be difficult for [you] but you got to understand that if you mess up, that you face up to five years in jail. I don't expect this to happen, not going to happen.

Defendant assured the trial court it would not.

The trial court entered a judgment of conviction on June 23, 2000. The written judgment mirrored the terms orally imposed by the trial court. Defendant successfully completed his probationary sentence and was discharged from probation in June 2003.

On October 3, 2007, more than seven years after the trial court sentenced defendant and more than four years after defendant

had successfully completed his probationary sentence and had been discharged, the Chairman of the New Jersey State Parole Board wrote to the trial court noting that the sentence the court had imposed upon defendant in June 2000 did not contain any reference to community supervision for life in accordance with the terms of *N.J.S.A.* 2C:43–6.4. He requested that the trial court review the matter and advise whether defendant's sentence should be amended to include a provision for community supervision for life. The trial court, in turn, contacted the attorney who had represented defendant in connection with his negotiated plea and sentence, informing him that it would file an amended judgment of conviction that would include a provision subjecting defendant to community supervision for life unless the attorney submitted an objection within the next ten days. The attorney advised the trial court that he had not represented defendant for a number of years and was not in a position either to object or to concur with the trial court's proposal. He requested that defendant be notified directly of the Parole Board's request.

Although such direct notification was never sent to defendant, the trial court entered an amended judgment of conviction on April 30, 2008. There were only two differences between this judgment and that entered nearly eight years earlier. On the original judgment, the box next to the line stating that "[t]he defendant is hereby sentenced to community supervision for life" was left blank while on the later judgment it was checked. In addition, the following sentence was added in bold type to the later judgment: "The judgment of conviction is amended to reflect that defendant is sentenced to community supervision for life."

On June 19, 2008, Rod Nelson, a senior parole officer, wrote to defendant. His letter stated in pertinent part:

> This letter is in reference to the sentence that you received in New Jersey Superior Court, Law Division—Criminal, in Monmouth County on June 16, 2000. In a recent audit it was found that your sentence was to include Community Supervision for Life. All sex offenses committed after 10/31/94 are to include this proponent [sic] in their sentence. I have included a copy of the Amended Judgment of Conviction .. which reflects the inclusion of Community Supervision for Life.

The letter directed defendant to report on a specified date to the parole office to process the necessary paperwork. It also informed defendant that his failure to do so would constitute a fourth-degree crime carrying a sentencing exposure of up to eighteen months in prison.

Thereafter, defendant, represented by the attorney who had represented him in conjunction with his plea negotiations and sentencing, filed a petition for post-conviction relief in which he requested that the trial court vacate the amended judgment. He contended that the trial court had lacked jurisdiction to amend that judgment because he had already completed the sentence that the trial court had imposed on him. He argued further that amending the judgment of conviction to include a provision for community supervision for life after he had fully completed his sentence constituted double jeopardy, denied him due process of law, and was fundamentally unfair. In opposition to defendant's petition, the State argued that the original sentence was illegal because it omitted the statutorily mandated provision of community supervision for life and that defendant could not have an expectation of finality in an illegal sentence.

The trial court denied defendant's petition. In its view, it had jurisdiction to amend the original judgment because the sentence as originally imposed was illegal. It noted that when defendant pled guilty, he had, in completing the form headed "Additional Questions for Certain Sexual Offenses," answered "Yes" to the question asking whether he understood that a conviction for sexual assault carried with it as part of the sentence "a special sentence of community supervision for life." The trial court considered that question to be adequate explanation to defendant of the consequences of community supervision for life. The trial court was not persuaded by defense counsel's argument that he had incorrectly advised defendant that community supervision for life merely involved registration requirements. The trial court concluded that defendant had not been denied due process and, further, that

amending the judgment of conviction was not fundamentally unfair to defendant.

Defendant appealed the denial of his petition for post-conviction relief. The Appellate Division, in an unreported opinion, reversed the trial court. It concluded that the trial court's action in amending the judgment of conviction violated defendant's double-jeopardy rights. It remanded the matter to the trial court for entry of the original judgment of conviction that omitted any reference to community supervision for life. We granted the State's petition for certification. 208 *N.J.* 368, 29 *A.*3d 741 (2011).

## II.

The State contends that the appellate panel erred. It argues that the sentence imposed on defendant in 2000 was illegal and that an illegal sentence may be corrected at any time. It points to the paperwork completed at the time defendant pled guilty and asserts that defendant was adequately advised of the consequences of his guilty plea. It notes that the trial court stated when it accepted defendant's guilty plea that it was satisfied that defendant understood the terms of the plea. The State contends that because the sentence imposed on defendant in 2000 was illegal, defendant was not entitled to any expectation of finality with respect to that sentence.

Defendant counters those arguments. He contends that a sentence may not be enhanced after a defendant has completed the sentence originally imposed by the trial court. He argues that community supervision for life is punitive in nature and that the action of the trial court, adding a provision for community supervision for life to his sentence years after he completed his sentence, violated double-jeopardy principles.

## III.

We note the standard governing our review of this issue. When an appellate court reviews a trial court's analysis of a legal

issue, it does not owe any special deference to the trial court's legal interpretation. *Manalapan Realty, L.P. v. Twp. Comm.*, 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995). "[A]ppellate review of legal determinations is plenary." *State v. Handy,* 206 *N.J.* 39, 45, 18 *A.*3d 179 (2011). "When a question of law is at stake, the appellate court must apply the law as it understands it." *State v. Mann,* 203 *N.J.* 328, 337, 2 *A.*3d 379 (2010) (citing *State v. Gandhi,* 201 *N.J.* 161, 176, 989 *A.*2d 256 (2010)). The issue presented is legal in nature, and thus our review is plenary.

## IV.

An individual's right against being placed in jeopardy twice for the same offense is both a common law and a constitutional right. *State v. Laird,* 25 *N.J.* 298, 305, 135 *A.*2d 859 (1957). A core principal of " 'the jurisprudence of England and America . . . is that no man can be twice lawfully punished for the same offense.' " *Ibid.* (quoting *Ex parte Lange,* 85 *U.S.* (18 *Wall.*) 163, 168, 21 *L.Ed.* 872, 876 (1874)). The constitutional protection against double jeopardy is contained in both the Fifth Amendment to the United States Constitution and Article I, paragraph 11 of the New Jersey Constitution. There is no distinction in the protections afforded by one provision as opposed to the other, and thus "[o]ur State's double-jeopardy jurisprudence mirrors federal law." *State v. Kelly,* 201 *N.J.* 471, 484, 992 *A.*2d 776 (2010); *accord State v. Dillihay,* 127 *N.J.* 42, 47, 601 *A.*2d 1149 (1992) ("We have consistently interpreted New Jersey's constitutional double jeopardy protection . . . as co-extensive with the guarantee of the federal constitution.").

Both constitutions provide, in essence, three forms of protection to a defendant. *Jones v. Thomas,* 491 *U.S.* 376, 380–81, 109 *S.Ct.* 2522, 2525, 105 *L.Ed.*2d 322, 331 (1989). They preclude prosecuting a defendant for the same offense after an acquittal and also preclude prosecuting a defendant for the same offense after a conviction. *Id.* at 381, 109 *S.Ct.* at 2525, 105 *L.Ed.*2d at 331. Additionally, they preclude imposing on a defendant " 'multi-

ple punishments for the same offense.'" *Ibid.* (quoting *North Carolina v. Pearce,* 395 *U.S.* 711, 717, 89 *S.Ct.* 2072, 2076, 23 *L.Ed.*2d 656, 665 (1969)). In this appeal, we deal with that latter aspect of double jeopardy.

### A.

 Community supervision for life has its statutory source in *N.J.S.A.* 2C:43–6.4, the Violent Predator Incapacitation Act. The statute is one component of a series of laws that are referred to generally as "Megan's Law." *See L.* 1994, *c.* 130. At the time of defendant's offense, guilty plea, and sentence, *N.J.S.A.* 2C:43–6.4(a) directed that a trial court, when imposing a sentence for certain enumerated offenses, "shall include, in addition to any sentence authorized by this Code, a special sentence of community supervision for life."

There are two aspects to the question of whether the trial court could amend defendant's judgment of conviction in the manner in which it did. The first aspect is determining whether community supervision for life should be deemed punitive or remedial in nature. If it is remedial, double-jeopardy principles are inapplicable. The answer to this issue depends in part on what is entailed in community supervision for life.

We note that the parties did not address this question in their initial briefs. Indeed, the State in its petition for certification made no assertion that *N.J.S.A.* 2C:43–6.4 was a remedial statute and thus beyond the scope of double-jeopardy analysis. After this matter was argued orally, we asked the parties to submit supplemental briefs with respect to that question. Having reviewed those submissions in which the State contended that the statute is remedial and defendant argued that it is punitive, we are satisfied that defendant's position, that the statute is punitive, is correct. We reach that conclusion for several reasons.

The State points to the registration and notification requirements contained in *N.J.S.A.* 2C:7–1 to –11, which were also enacted as part of Megan's Law. It stresses that this Court found

those provisions to be remedial and not punitive in *Doe v. Poritz,* 142 *N.J.* 1, 662 *A.*2d 367 (1995), and urges us to reach a similar conclusion with respect to community supervision for life. There are, however, significant distinctions between the statutes, and the characterization of one does not control the characterization of the other.

While *N.J.S.A.* 2C:43–6.4(a) provides for community supervision for life, it does not delineate its scope. The main features of the supervision are found in the accompanying regulations, in particular *N.J.A.C.* 10A:71–6.11, which sets forth the general conditions that attach to a person under community supervision for life. An individual who is subject to community supervision for life, for example, cannot freely choose where to reside; he must obtain the permission of his supervising parole officer. *N.J.A.C.* 10A:71–6.11(b)(5)–(6). Similarly, he must obtain the permission of his parole officer before commencing employment and must notify his parole officer if he loses his employment. *N.J.A.C.* 10A:71–6.11(b)(14)–(15). He is subject to random drug and alcohol testing, *N.J.A.C.* 10A:71–6.11(b)(13), as well as a yearly polygraph examination, *N.J.A.C.* 10A:71–6.11(b)(21). Further, his parole officer may impose a curfew, *N.J.A.C.* 10A:71–6.11(b)(17), and he is restricted in terms of the use of a computer and the Internet, *N.J.A.C.* 10A:71–6.11(b)(22). In addition to those general conditions, special conditions may be imposed to meet the individual's particular situation. *N.J.A.C.* 10A:71–6.11(k). The imposition of those types of conditions significantly restricts the manner in which an individual may pursue his daily life.

*N.J.S.A.* 2C:7–2, by contrast, addresses the obligation of individuals convicted of certain specified offenses to register with the appropriate law enforcement agency when they take up residence in a community. There is no requirement in that statute that an individual obtain permission before moving to that community— simply that the individual register upon doing so. *See N.J.S.A.* 2C:7–2(c). Moreover, an individual sentenced to community supervision for life must receive permission before commencing

employment; the registration and notification statutes do not set forth that requirement. *Compare N.J.A.C.* 10A:71–6.11(b)(14) *with N.J.S.A.* 2C:7–2. Similarly, *N.J.S.A.* 2C:7–2(d)(2) requires that an individual subject to the statute notify the appropriate law enforcement agency of the nature of computer and Internet access available to him. He is not required to obtain permission for certain types of computer or Internet use as is an individual subject to community supervision for life. *Compare N.J.A.C.* 10A:71–6.11(b)(22) *with N.J.S.A.* 2C:7–2. The mere loss of anonymity that flows from the registration and notification requirements of *N.J.S.A.* 2C:7–2 cannot be equated with the significant restrictions that are attendant to community supervision for life.

There are, in addition, significant distinctions in the language employed by both statutes. *N.J.S.A.* 2C:7–2(a)(1) states that an individual "shall register," and *N.J.S.A.* 2C:7–3(1) states that the "court imposing a sentence … shall notify the defendant of the obligation to register." *N.J.S.A.* 2C:43–6.4(a), on the other hand, provided at that time that the court "imposing sentence on a person who has been convicted of [certain specified sexual offenses] shall include, in addition to any sentence authorized by this Code, a special sentence of community supervision for life."

The language selected by the Legislature clearly indicates that it viewed community supervision for life as an integral part of a defendant's sentence, imposed as part of a court's sentencing authority, rather than a defendant's administrative obligation following completion of the sentence. A further indication that the Legislature viewed the statute as punitive is found in the placement of the statute in the sentencing portion of the criminal code. The registration and notification requirements to which the State points are located in an entirely different section of the criminal code, far removed from the sentencing provisions.

■ We reject, moreover, the State's argument that *N.J.S.A.* 2C:43–6.4 is remedial rather than punitive because the purpose of the statute is to protect members of the community. Certainly, one of the purposes of community supervision for life is "to protect

the public from recidivism by defendants convicted of serious sexual offenses." *Sanchez v. N.J. State Parole Bd.*, 368 *N.J.Super.* 181, 184, 845 *A.*2d 687 (App.Div.), *certif. granted*, 182 *N.J.* 140, 861 *A.*2d 845 (2004), *appeal dismissed*, 187 *N.J.* 487, 901 *A.*2d 951 (2006). But that is equally one of the purposes of incarceration. Such a general legislative purpose is not dispositive of the analysis.

At least two appellate panels have concluded that community supervision for life is punitive in nature. *See State ex rel. B.P.C.*, 421 *N.J.Super.* 329, 354, 23 *A.*3d 937 (App.Div.2011); *State v. Jamgochian*, 363 *N.J.Super.* 220, 224, 832 *A.*2d 360 (App.Div. 2003). In each of these cases, the panel determined that the defendant who was misinformed about the consequences of community supervision was entitled to an evidentiary hearing to determine whether he should be permitted to withdraw his guilty plea. *B.P.C., supra*, 421 *N.J.Super.* at 354, 23 *A.*3d 937; *Jamgochian, supra*, 363 *N.J.Super.* at 226, 832 *A.*2d 360. Indeed, in *Jamgochian, supra*, the appellate panel noted that it considered it "clear, and the State [did] not argue to the contrary, that community supervision for life ... is a penal and not a collateral consequence of the sentence." 363 *N.J.Super.* at 224, 832 *A.*2d 360.

Because we are satisfied that *N.J.S.A.* 2C:43–6.4 is punitive rather than remedial at its core, we must proceed to consider whether the trial court's action was merely a valid correction of an illegal sentence or an improper imposition of an additional penalty.

### B.

There are two categories of illegal sentences: (1) those that exceed the penalties authorized by statute for a particular offense and (2) those that are not in accordance with the law, or stated differently, those that include a disposition that is not authorized by our criminal code. *State v. Murray*, 162 *N.J.* 240, 246–47, 744 *A.*2d 131 (2000). That defendant's initial sentence was

illegal because it did not include community supervision for life, as argued by the State, fits within the latter category.

The general procedures governing a change of sentence are contained within *Rule* 3:21–10. Subsection (a) provides that a court may "change a sentence, either on motion or on its own initiative, by order entered within 75 days from the date of the judgment of conviction and not thereafter." *R.* 3:21–10(a). Subsection (b) of the rule sets forth the exceptions to that general principle, one of which is that a court may at any time correct "a sentence not authorized by law including the Code of Criminal Justice." *R.* 3:21–10(b)(5). A number of courts have expressed the view that a court may correct an illegal sentence at any time, "even though the imposition of a lawful term involves an increase in a defendant's aggregate sentence." *State v. Baker,* 270 *N.J.Super.* 55, 76, 636 *A.*2d 553 (App.Div.), *aff'd o.b.,* 138 *N.J.* 89, 648 *A.*2d 1127 (1994); *accord State v. Chambers,* 377 *N.J.Super.* 365, 369, 872 *A.*2d 1109 (App.Div.2005); *State v. Johnson,* 376 *N.J.Super.* 163, 170, 869 *A.*2d 473 (App.Div.), *certif. denied,* 183 *N.J.* 592, 874 *A.*2d 1109 (2005).

 That principle, however, is not unlimited. In discussing the predecessor to *Rule* 3:21–10, this Court stated that the "at any time" phrase "was not designed to authorize an enlargement of the punishment after the sentence imposed had been satisfied and the defendant discharged." *Laird, supra,* 25 *N.J.* at 307, 135 *A.*2d 859. Thus, this Court noted in *Murray, supra,* that an illegal sentence "may be corrected at any time before it is completed." 162 *N.J.* at 247, 744 *A.*2d 131. "An illegal sentence that has not been completely served may be corrected at any time without impinging upon double-jeopardy principles." *State v. Austin,* 335 *N.J.Super.* 486, 494, 762 *A.*2d 1052 (App.Div.2000) (vacating defendant's No Early Release Act sentence but remanding for resentencing to impose mandatory Graves Act sentence), *certif. denied,* 168 *N.J.* 294, 773 *A.*2d 1157 (2001).

 "While an 'illegal' sentence is 'correctable at any time,' the State has an obligation to move quickly when asserting an

'illegality' because the defendant has an expectation of finality of a sentence within the parameters of statutory limits...." *State v. Tavares,* 286 *N.J.Super.* 610, 619, 670 *A*.2d 61 (App.Div.), *certif. denied,* 144 *N.J.* 376, 676 *A*.2d 1091 (1996). Indeed, "[p]artial execution of a legal sentence may preclude appellate review even if there is statutory authorization to permit the appeal." *State v. Ciancaglini,* 204 *N.J.* 597, 604–05, 10 *A*.3d 870 (2011). *N.J.S.A.* 2C:35–14(c)(2) and *N.J.S.A.* 2C:44–1(f)(2), for instance, provide that certain sentences imposed over the prosecutor's objection do not become final for ten days to permit the prosecutor to appeal.

There are only two reported decisions in New Jersey that have permitted modification of a judgment of conviction that omitted the statutorily mandated provision for community supervision for life, and both are distinguishable. In *State v. Horton,* 331 *N.J.Super.* 92, 751 *A*.2d 141 (App.Div.2000), the defendant pled guilty in September 1995 to one count of third-degree endangering the welfare of a child, and the State agreed to recommend a probationary sentence, conditioned on serving 364 days in the county jail. *Id.* at 94, 751 *A*.2d 141. The trial court accepted the defendant's plea and sentenced the defendant on January 12, 1996. *Id.* at 95, 751 *A*.2d 141.

In April 1997, the Chairman of the New Jersey State Parole Board wrote to the trial court inquiring about the omission of any reference to community supervision for life. *Ibid.* At the time of that letter, the defendant had completed the custodial portion of his sentence but remained on probation. *Ibid.* In July 1997, when approximately six months remained to the defendant's probationary sentence, the State moved to amend the judgment of conviction to include community supervision for life. *Id.* at 96, 751 *A*.2d 141. The trial court granted the motion, and the defendant appealed. *Ibid.* The appellate panel concluded that the trial court's action in amending the judgment of conviction did not run afoul of the constitutional prohibition against double jeopardy. *Id.* at 102, 751 *A*.2d 141.

*Horton,* however, is distinguishable from the present matter in one critical respect. In that case, the State sought to amend the judgment of conviction prior to the completion of the defendant's probationary sentence, while in the present matter defendant had completed his probationary sentence and been discharged from probation for more than four years when the issue first arose.

In one other published opinion, the Appellate Division addressed amending a judgment of conviction to include a provision for community supervision for life that had been omitted when the sentence was imposed. *State v. Cooke,* 345 *N.J.Super.* 480, 490, 785 *A.*2d 934 (App.Div.2001), *certif. denied,* 171 *N.J.* 340, 793 *A.*2d 718 (2002). In that case, however, the State appealed the sentence, and the defendant cross-appealed his conviction. *Id.* at 483, 785 *A.*2d 934. Because the issue of the defendant's sentence was properly before the court, the court could correct what was otherwise an illegal sentence. *See State v. Kirk,* 243 *N.J.Super.* 636, 643, 581 *A.*2d 115 (App.Div.1990).

Because there was no published authority in New Jersey that discussed whether a defendant's sentence could be modified after he had completed it, the appellate panel found guidance in the majority opinion of the New York Court of Appeals in *People v. Williams,* 14 *N.Y.*3d 198, 899 *N.Y.S.*2d 76, 925 *N.E.*2d 878, *cert. denied,* —— *U.S.* ——, 131 *S.Ct.* 125, 178 *L.Ed.*2d 242 (2010). New York by statute directs that post-release supervision is a mandatory component of any sentence to a fixed period of incarceration. *Id.,* 899 *N.Y.S.*2d 76, 925 *N.E.*2d at 881–82. In *Williams,* the court addressed five appeals involving defendants whose original sentences should have included post-release supervision but did not. *Id.* 899 *N.Y.S.*2d 76, 925 *N.E.*2d at 881.

The Department of Correctional Services sought to amend the judgments of conviction after the defendants had completed the sentences originally imposed upon them. *Id.* 899 *N.Y.S.*2d 76, 925 *N.E.*2d at 884. A majority of the court found that the State lacked the ability to do so. *Id.* 899 *N.Y.S.*2d 76, 925 *N.E.*2d at 889. The court stated the following:

[T]here must be a temporal limitation on a court's ability to resentence a defendant since criminal courts do not have perpetual jurisdiction over all persons who were once sentenced for criminal acts. Even where a defendant's sentence is illegal, there is a legitimate expectation of finality once the initial sentence has been served and the direct appeal has been completed (or the time to appeal has expired). In these situations, the sentences are beyond the court's authority....

[*Id.* 899 *N.Y.S.*2d 76, 925 *N.E.*2d at 890 (citation omitted).]

Our own research has not disclosed reported authority that is more persuasive than *Williams.* The Supreme Court of Minnesota has, on several occasions, dealt with the power of a court to modify a sentence to include the statutorily mandated provision for conditional release that had erroneously been omitted from the original sentence. *See State v. Garcia,* 582 *N.W.*2d 879 (Minn. 1998); *State v. Humes,* 581 *N.W.*2d 317 (Minn.1998). In both of those cases, however, the defendants had not completed serving the sentences originally imposed when the State sought correction. *See Garcia, supra,* 582 *N.W.*2d at 880–81; *Humes, supra,* 581 *N.W.*2d at 318. In *State v. Calmes,* 632 *N.W.*2d 641 (Minn.2001), although the defendant had served the custodial portion of his sentence by the time the State sought to modify it by adding a period of conditional release, the defendant was on notice during the period of his confinement that the sentence originally imposed did not comply with statutory requirements. *Id.* at 648.

The State, asserting that "the key to double jeopardy analysis of a sentence increase or correction is whether the defendant had a legitimate expectation in the finality of his original, incorrect sentence," argues that the trial court's action was correct because defendant did not have a legitimate expectation of finality in his incorrect sentence. In support of this latter proposition, it cites *Bozza v. United States,* 330 *U.S.* 160, 67 *S.Ct.* 645, 91 *L.Ed.* 818 (1947), and *State v. Eigenmann,* 280 *N.J.Super.* 331, 655 *A.*2d 452 (App.Div.1995). Neither case supports the amendment directed by the trial court here.

In *Bozza, supra,* the sentencing court corrected its sentencing error approximately five hours after it had imposed sentence. 330 *U.S.* at 165, 67 *S.Ct.* at 648, 91 *L.Ed.* at 821. Here, of course, the attempted correction did not take place for years. In *Eigenmann,*

*supra,* the panel, noting that "the court's authority in correcting sentences is limited and must be sparingly exercised," held that a defendant erroneously sentenced as a youthful offender to a twenty-eight month term could not thereafter be sentenced to an aggregate fifteen-year term. 280 *N.J.Super.* at 346, 655 *A.*2d 452. In reaching that conclusion, the panel determined that " '[t]he potential for abuse in broad judicial power to increase sentences outweighs the possibility of giving a few defendants the benefits resulting from a judicial mistake.' " *Id.* at 348, 655 *A.*2d 452 (quoting *United States v. Turner,* 518 *F.*2d 14, 17 (7th Cir.1975)).

We fail to see how it could be said that defendant, at least by the time he was discharged from probation, did not have a legitimate expectation of finality in his sentence. If there was some indication in this record that either defendant or his attorney had engaged in some effort to mislead the court with respect to omitting community supervision for life from defendant's sentence, we would agree that any expectation of finality defendant might have achieved would not be a legitimate one. The record before us contains not a hint, however, of such a devious plot.

The State has not cited to us any published case from any jurisdiction that has permitted a defendant's sentence to be increased after the sentence has been completed. In our judgment, the reason for the omission is clear: to permit such an action is a violation of a defendant's fundamental rights under the Double Jeopardy Clauses of the United States and New Jersey Constitutions.

## V.

We add the following brief observations in response to the comments of our dissenting colleague. Contrary to the views expressed in the dissent, our analysis does not rest upon a consideration of the subjective impact of the restrictions inherent in community supervision for life upon the individual who is subject to them. Rather, its statutory analysis begins, as it should, with the language selected by the Legislature to express

its views and considers the overall goals the Legislature sought to achieve. *State v. Hupka*, 203 *N.J.* 222, 231, 1 *A.*3d 640 (2010) (quoting *Patel v. N.J. Motor Vehicle Comm'n*, 200 *N.J.* 413, 418, 982 *A.*2d 445 (2009)) (" '[O]ur goal is to discern and effectuate the Legislature's intent [and] the plain language of the statute is our starting point.' "). It is the Legislature, for example, that described community supervision for life as a "special sentence" to be imposed by the sentencing court. *N.J.S.A.* 2C:43–6.4a. We cannot disregard such a clear expression of the intent of the Legislature when it enacted *N.J.S.A.* 2C:43–6.4.

In 2003, the Legislature amended *N.J.S.A.* 2C:43–6.4. The Legislature explained the amendment was intended to "clarify" portions of the original legislation. *Sponsor's Statement, Statement to Senate Bill No. 2659* (2003). Because the amendment was intended as clarification rather than modification, it is a further tool to determine the intent behind the original enactment. *In re D.C.*, 146 *N.J.* 31, 51, 679 *A.*2d 634 (1996) ("The purpose of a curative amendment is merely to 'remedy a perceived imperfection in or misapplication of a statute'. The amendment explains or clarifies existing law and brings it into 'harmony with what the Legislature originally intended' ") (quoting *Schiavo v. John F. Kennedy Hosp.*, 258 *N.J.Super.* 380, 386, 609 *A.*2d 781 (App.Div. 1992), *aff'd*, 131 *N.J.* 400, 620 *A.*2d 1050 (1993)). As part of this amendment, the Legislature specified that individuals serving such a sentence "remain in the legal custody of the Commissioner of Corrections" during the entire period of their supervision. Individuals required to register under *N.J.S.A.* 2C:7–1 to –23 are not in the custody of the Commissioner, and neither are individuals committed for treatment as sexually violent predators under *N.J.S.A.* 30:4–27.24 to –27.38. This is a further indication that the Legislature's intent was to enact a penal, not a remedial statute.

The dissent appears to conclude that because this Court determined that *N.J.S.A.* 2C:7–1 to –23, with its notification and registration provisions, and *N.J.S.A.* 30:4–27.24 to –27.38, the Sexually Violent Predator Act, are remedial in nature, the statute

creating community supervision for life, *N.J.S.A.* 2C:43–6.4, must also be remedial. Apart from the fact that *N.J.S.A.* 2C:7–1 to –23 and *N.J.S.A.* 30:4–27.24 to –27.38 contain no mention of the court's sentencing power (indeed, the Sexually Violent Predator Act is not even contained within the criminal code, let alone its sentencing provisions), we are unable to perceive the logical connection drawn by the dissent.

The dissent cites *United States v. Edmonson,* 792 *F.*2d 1492 (9th Cir.1986), *cert. denied,* 479 *U.S.* 1037, 107 *S.Ct.* 892, 93 *L.Ed.*2d 844 (1987), to support its view that there is no constitutional impediment to correcting and increasing an illegal sentence even after the illegal sentence has been served. That case, however, provides no support for sentencing this defendant to community supervision for life four years after he completed and was discharged from his probationary sentence.

The issue of the sentence to which the defendant Edmonson was subject was argued extensively at the time he was sentenced, and the government's intention to appeal was known to all. 792 *F.*2d at 1495. The defendant could not have had a legitimate expectation of finality in his sentence.

The position of this defendant is not at all comparable to that of the defendant Edmonson. When defendant was sentenced, there was no indication of any issue with respect to the validity of the sentence he originally received. Nor was there any indication of any issue with respect to defendant's sentence during the entire time he served his probationary sentence. No question was raised with respect to defendant's sentence until more than four years after it had been completed.

The dissent criticizes our conclusion that the views expressed by a majority of the New York Court of Appeals in *People v. Williams, supra,* are more persuasive than those expressed in certain opinions of our Appellate Division. We do no more than note that we disagree with the dissent's assessment of the persuasive power of these opinions.

Finally, we observed earlier in our opinion that New Jersey's double jeopardy jurisprudence mirrors the federal jurisprudence. To forestall the possibility of any confusion in the future, however, we note that our ultimate conclusion, that to amend this defendant's judgment of conviction to add community supervision for life years after he had been discharged from probation, violates Article I, paragraph 11 of our New Jersey Constitution and its prohibition against double jeopardy.

## VI.

For the reasons stated, the judgment of the Appellate Division is affirmed. The matter is remanded to the trial court with directions to re-enter the judgment of conviction of June 23, 2000.

Justice HOENS, dissenting.

Defendant Joseph Schubert, then a New York City police officer, was charged in two separate indictments with a series of crimes. All of the crimes arose from an incident in which he engaged in non-consensual intercourse with a woman who was his neighbor in a New Jersey shore community. In connection with his plea to second degree sexual assault, defendant completed and signed three separate plea forms, one of which specifically warned him that he would be subject to community supervision for life. Defendant responded to that question in the affirmative, indicating that he understood this mandatory consequence of his plea. Moreover, during the plea colloquy, defendant's attorney assured the court that he had discussed the questions on the three plea forms with defendant. He described those discussions as having taken "a great deal of time," a fact that defendant himself essentially conceded.

In entering his plea of guilty to the second degree offense, defendant therefore conceded that he was subject to a sentence that included, necessarily, the requirement that he be subjected to community supervision for life. In fact, he could not have believed otherwise, as our Legislature has mandated that sentences based

on all such offenses include the community supervision for life provision. *N.J.S.A.* 2C:43–6.4.

Notwithstanding the clear directive of the Legislature that the offense for which defendant stands convicted requires that he be subject to community supervision for life, the majority today concludes that, for this defendant, that requirement will simply be erased. Merely because of a trial court's inadvertent failure to place a check mark in a box on the Judgment of Conviction, the majority concludes that defendant, alone among convicted sex offenders, need not comply with the statute's clear supervision for life mandate.

The majority reaches its result by first concluding that community supervision for life is punitive, *ante* at 304–09, 53 *A.*3d at 1215–18, thus permitting defendant to invoke the constitutional protections of the federal and state Double Jeopardy clauses. *U.S. Const.* amend. V; *N.J. Const.* art. I, ¶ 11. Second, in considering the reach of those protections, the majority concludes that because defendant completed serving his probationary term before the inadvertent error in the Judgment of Conviction was discovered, he enjoys an expectation of finality that renders the trial court, and this Court, powerless to correct that obviously illegal sentence. *Ante* at 308–13, 53 *A.*3d at 1217–20.

Because the statutory mandate that sexual offenders be subject to community supervision for life is not punitive and because there can be no legitimate expectation of finality in an illegal sentence, I respectfully dissent.

I.

The majority finds support for its conclusion that the provision in the statute requiring that sex offenders serve community supervision for life is punitive in three strands of reasoning. First, they look to what is entailed in the supervision requirement, reasoning that it is punitive because it involves significant restrictions akin to those imposed on parolees. *Ante* at 305–07, 53 *A.*3d

at 1216–17. Second, the majority observes that the supervision provision must be part of the punishment for the crime and therefore punitive because, unlike the registration and notice requirements of Megan's Law, it is found in the sentencing statute and is referred to as a "special sentence." *Ante* at 307–08, 53 *A*.3d at 1217. Third, the majority finds support for its conclusion because, in the context of plea withdrawal, two appellate panels have commented that they believe that the supervision requirement is punitive. *Ante* at 307–09, 53 *A*.3d at 1217–18. None of these points, in my view, is a sound basis for the conclusion the majority reaches when compared to the relevant precedents from this Court or from the United States Supreme Court.

The fundamental flaw in the majority's reasoning comes from its focus on the restrictions that community supervision for life imposes on sexual offenders. That approach ignores the analytical framework ordinarily utilized in deciding whether a statute is punitive. The proper analytical framework looks not to what a court might think of the impact of the restrictions imposed, but to what the Legislature intended when enacting the provision. That critical inquiry, however, is absent from the majority's opinion, an error that has led the majority to substitute its view of the restrictions for that evidenced by the Legislature's intent.

Our traditional method of determining whether a statute is punitive first demands that we inquire into whether the legislative intent was regulatory or punitive. *Doe v. Poritz*, 142 *N.J.* 1, 43, 662 *A*.2d 367 (1995). If the intent is regulatory, the inquiry turns to whether, in spite of that legislative intent, the impact is in fact punitive when analyzed in terms of the goals of punishment, which are retribution and deterrence. Even so, a punitive impact renders the law a form of punishment only if the sole explanation for that impact is a punitive intent. *Ibid.* As we have previously held in the context of the registration and notification requirements of Megan's Law, "the law is characterized as regulatory in accor-

dance with the legislative intent even if there is some punitive impact, if that impact is simply an inevitable consequence of the regulatory provisions themselves." *Id.* at 46, 662 *A*.2d 367. We have recognized that the law will be considered punitive "only if the punitive impact comes from aspects of the law unnecessary to accomplish its regulatory purposes[.]" *Ibid.*

Moreover, whether a statute is punitive is not determined from the defendant's perspective, because even remedial sanctions carry the "sting of punishment." *Id.* at 58, 662 *A*.2d 367 (quoting *United States v. Hudson,* 14 *F*.3d 536, 542 (10th Cir.1994), *aff'd,* 522 *U.S.* 93, 118 *S.Ct.* 488, 139 *L.Ed.*2d 450 (1977)). As in this circumstance, if the stated legislative intent is remedial, the burden falls on those parties claiming a punitive intent to make that showing with the "clearest proof," *id.* at 62, 662 *A*.2d 367 (quoting *United States v. Ward,* 448 *U.S.* 242, 248–49, 100 *S.Ct.* 2636, 2641, 65 *L.Ed.*2d 742, 749–50 (1980)), because courts ordinarily defer to the Legislature's stated intent, *see Smith v. Doe,* 538 *U.S.* 84, 92, 123 *S.Ct.* 1140, 1147, 155 *L.Ed.*2d 164, 176 (2003). To be sure, we have recognized that if the provisions selected by the Legislature to implement its remedial, regulatory intent are "excessive" so that they "do *not* advance the regulatory purpose," then they are punitive, but merely having a deterrent or punitive impact does not equate with punishment. *Doe, supra,* 142 *N.J.* at 75, 662 *A*.2d 367 (emphasis in original).

In reaching its conclusion, the majority sidesteps this analysis entirely, giving no heed to the legislative intent other than the observation that the provision is made a part of sentencing. Had the majority considered the intent of the provision, it would have found there an entirely legitimate, regulatory purpose. Indeed, each time that we have considered one of the many restrictions placed on sexual offenders, both through the various other provisions of Megan's Law, *see Doe, supra,* 142 *N.J.* at 73–74, 662 *A*.2d 367, or through mechanisms like civil commitment, *In re J.M.B.,* 197 *N.J.* 563, 600–01, 964 *A*.2d 752 (rejecting ex post facto challenge to SVPA), *cert. denied,* —— *U.S.* ——, 130 *S.Ct.* 509, 175

*L.Ed.*2d 361 (2009), we have repeatedly concluded that the goal of the Legislature is remedial and regulatory, not punitive. Nothing in the matter now before this Court militates in favor of any different reasoning on this previously well-settled concept.

The overarching theme expressed in the statutes known collectively as Megan's Law is the creation of a system of monitoring, registration and community notification for sex offenders. *See Doe, supra,* 142 *N.J.* at 31–39, 662 *A.*2d 367. In similarly clear terms, when imposing the mandatory community supervision for life provision, the Legislature described the intended supervision to encompass "conditions appropriate to protect the public and foster rehabilitation." *N.J.S.A.* 2C:43–6.4(b). That the provisions are regulatory is underscored by the statutory provision permitting the offender to petition the court after a specified period of time to remove that requirement. *See N.J.S.A.* 2C:43–6.4(c). Particularly telling is that the ground for that relief is a showing that the offender is no longer "likely to pose a threat to the safety of others if released from parole supervision." *Ibid.* Although the offender must make this showing by clear and convincing evidence, that requirement is tied to the Legislature's intention "to ensure that the public is protected." *See* Cannel, *New Jersey Criminal Code Annotated,* comment on *N.J.S.A.* 2C:43–6.4 (2011) (quoting S. Law & Pub. Safety Comm., *Statement to S. No. 2659* (Nov. 24, 2003)).

Before today, we have not concluded that, simply because a restriction may be severe or carry a lifelong consequence, it is punitive. *See Doe, supra,* 142 *N.J.* at 15–17, 662 *A.*2d 367 (declaring registration and notification requirements of Megan's Law to be protective measures rather than punishment despite their severe, lifelong consequences). On the contrary, we have been appropriately deferential to the difficult task faced by the Legislature in its effort to create the remedial sentencing scheme found in Megan's Law in light of the significant social problems posed by sexual predators:

The recidivism of a repetitive and compulsive sex offender is almost intractable. The problem of this form of recidivism poses an enormous challenge to the Legislature to devise a solution generally designed to remedy the problem without unnecessarily penalizing those who are its source.... [A] statute that can fairly be characterized as remedial, both in its purpose and implementing provisions, does not constitute punishment *even though its remedial provisions have some inevitable deterrent impact, and even though it may indirectly and adversely affect, potentially severely, some of those subject to its provisions.*
[*Id.* at 40, 43, 662 A.2d 367 (emphasis added).]

Likewise, as this Court has previously held, "[c]ommunity supervision for life was 'designed to protect the public from recidivism by defendants convicted of serious sexual offenses.'" *Jamgochian v. N.J. State Parole Bd.,* 196 *N.J.* 222, 237–38, 952 A.2d 1060 (2008) (quoting *Sanchez v. N.J. State Parole Bd.,* 368 *N.J.Super.* 181, 184, 845 A.2d 687 (App.Div.), *certif. granted,* 182 *N.J.* 140, 861 A.2d 845 (2004), *appeal dismissed,* 187 *N.J.* 487, 901 A.2d 951 (2006)). In requiring lifetime supervision for such offenders, the Legislature merely sought to provide a means to regulate a known and continuing risk rather than to impose punishment for past activity. *See id.* at 242, 952 A.2d 1060 (recognizing that curfew, although constituting confinement for part of each day, is not equivalent to re-incarceration); *State v. S.R.,* 175 *N.J.* 23, 36, 811 A.2d 439 (2002) (Megan's Law construed broadly to protect the public); *Doe, supra,* 142 *N.J.* at 28–40, 88–89, 662 A.2d 367 (holding that goal of Megan's Law is not to punish convicted sex offenders but to protect society from risk of re-offense).

Merely comparing the requirements of community supervision for life with those of parole, as does the majority, is not sufficient to overcome the Legislature's intent for another reason. As the United States Supreme Court has commented, although parole is considered to be a part of the penological system, "[i]ts purpose is to help individuals reintegrate into society as constructive individuals as soon as they are able." *Morrissey v. Brewer,* 408 *U.S.* 471, 477–78, 92 *S.Ct.* 2593, 2598–99, 33 *L.Ed.*2d 484, 492–93 (1972). Moreover, as that Court has concluded, "parole officers are part of the administrative system designed to assist parolees and to offer them guidance." *Ibid.*

Viewed through this lens, the conditions of parole do not punish the parolee, but are designed to serve the dual remedial purposes of prohibiting behavior that is deleterious to the parolee's reintegration into society and of equipping the parole officer with the ability to guide the parolee's "constructive development." *Ibid.* "The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime[,]" including the opportunity to "be gainfully employed and ... free to ... form the other enduring attachments of normal life." *Id.* at 482, 92 *S.Ct.* at 2600–01, 33 *L.Ed.*2d at 494–95. "[T]he liberty of a parolee includes many of the core values of unqualified liberty[,]" making the conditions that parole imposes very different from those imposed on an inmate. *Ibid.* Therefore, even if we compare the restrictions imposed on defendant with those imposed on parolees, those restrictions alone cannot transform the Legislature's remedial or regulatory purpose into a punitive one.

Absent from the majority's opinion, moreover, is any recognition that laws requiring the involuntary and indefinite confinement of certain sexual offenders, which subject them to conditions far more onerous and restrictive than those imposed by community supervision for life, do not equate with punishment if those laws serve legitimate non-punitive governmental objectives. *See Kansas v. Hendricks,* 521 *U.S.* 346, 361–70, 117 *S.Ct.* 2072, 2082–86, 138 *L.Ed.*2d 501, 515–20 (1997) (declaring law that involuntarily confined sexually violent predators to be non-punitive because intent was to provide them with treatment while protecting public from their predicted future behavior); *In re W.X.C.,* 204 *N.J.* 179, 188–96, 8 *A.*3d 174 (2010) (rejecting argument that civil commitment advances unconstitutional hidden punitive intent), *cert. denied,* —— *U.S.* ——, 131 *S.Ct.* 1702, 179 *L.Ed.*2d 635 (2011); *State v. Bellamy,* 178 *N.J.* 127, 138, 835 *A.*2d 1231 (2003) (observing that indefinite confinement for treatment has a punitive impact that, although onerous, is not the product of Legislature's punitive intent, and is therefore constitutionally permitted). Were a comparative analysis of impact of the restriction relevant to the determination of whether any particular statute is punitive rather

than regulatory, surely the majority would need to undertake the comparison between the "onerous" impact of civil commitment and the far less onerous restrictions imposed by community supervision for life. Were they to engage in that analysis, they would conclude, as do I, that the community supervision for life requirement is remedial and regulatory rather than punitive.

For reasons not at all apparent in the majority's opinion, the well-established framework for determining whether a statute is punitive or regulatory, with its careful deference to the intent of the Legislature and its equally careful recognition, in matters relating to sexual offenders in particular, that some regulatory measures may carry inevitable punitive consequences, has now been cast aside in favor of what amounts to a simple catalogue of the restrictions imposed, along with the observation that they are found in the sentencing statute, that somehow equates with punishment for purposes of the constitutional inquiry. Because that reasoning fails to pay appropriate deference to the clear legislative intent, because it is directly contrary to the numerous precedents from the United States Supreme Court and from this Court analyzing similar provisions of Megan's Law in the face of comparable constitutional attacks, and because it cannot be harmonized with the far more onerous, yet concededly regulatory, provisions found in civil commitment of sexual offenders, I cannot agree with the majority's conclusion that community supervision for life is punitive. On that ground alone, I would conclude that the Double Jeopardy Clause does not prevent the imposition of the community supervision for life requirement on defendant.

## II.

I dissent for a separate reason, however, and one that arises from my disagreement with the majority's reasoning with regard to the application of the Double Jeopardy Clause.

As the majority quite correctly observes, the federal and state constitutional guarantees against double jeopardy afford protections, *ante* at 303–05, 53 *A.*3d at 1215, one of which is that a

defendant cannot be subject to "multiple punishments for the same offense," *North Carolina v. Pearce*, 395 *U.S.* 711, 717, 89 *S.Ct.* 2072, 2076, 23 *L.Ed.2d* 656, 665 (1969); *see State v. Laird*, 25 *N.J.* 298, 305, 135 *A.2d* 859 (1957) (embracing federal constitutional standard). Typically, jeopardy attaches once a defendant begins serving his sentence and precludes thereafter any increase to the terms of that sentence. *State v. Ryan*, 86 *N.J.* 1, 9–10, 429 *A.2d* 332, *cert. denied*, 454 *U.S.* 880, 102 *S.Ct.* 363, 70 *L.Ed.2d* 190 (1981).

Nevertheless, it is equally well settled that an illegal sentence may be corrected at any time even if the correction results in an increase in the terms imposed by the original, but illegal, sentence, and even if that increased term is one of greater imprisonment. *See State v. Baker*, 270 *N.J.Super.* 55, 72, 636 *A.2d* 553 (App.Div.) (citing *Bozza v. United States*, 330 *U.S.* 160, 67 *S.Ct.* 645, 91 *L.Ed.* 818 (1947) (additional citations omitted)), *aff'd o.b.*, 138 *N.J.* 89, 648 *A.2d* 1127 (1994).

As our Appellate Division has held, "although an erroneous exercise of sentencing discretion could not be corrected to a defendant's disadvantage after he had begun serving his sentence, an illegal sentence could be corrected by increasing it, even after served." *State v. Horton*, 331 *N.J.Super.* 92, 99–100, 751 *A.2d* 141 (App.Div.2000); *see State v. Eigenmann*, 280 *N.J.Super.* 331, 341, 655 *A.2d* 452 (App.Div.1995) (commenting that "defendant has no legitimate expectation of finality in a sentence below the statutorily mandated minimum sentence"). Similarly, our Appellate Division has held that "if the trial court or a reviewing court is made aware that a statutorily mandated sentence has not been imposed, the court is not precluded even by the Double Jeopardy Clauses of the Federal and State Constitutions from correcting the sentence and effectuating the legislative mandate." *State v. Ercolano*, 335 *N.J.Super.* 236, 243, 762 *A.2d* 259 (App.Div.2000), *certif. denied*, 167 *N.J.* 635, 772 *A.2d* 937 (2001).

Although the question of whether an illegal sentence that has already been served may be constitutionally corrected and in-

creased has been addressed only rarely, one federal court has concluded that it may. *See United States v. Edmonson*, 792 *F.*2d 1492, 1496–98 (9th Cir.1986) (holding that correction and increase of illegally imposed sentence already served by defendant is constitutional), *cert. denied*, 479 *U.S.* 1037, 107 *S.Ct.* 892, 93 *L.Ed.*2d 844 (1987). The courts reach a contrary conclusion in the entirely separate circumstance in which the already-served sentence was itself a legal one, a proposition as to which there can be no debate. *See, e.g., United States v. Daddino*, 5 *F.*3d 262, 265 (7th Cir.1993) (holding that defendant had legitimate expectation of finality in portions of legal sentence already served); *United States v. Arrellano–Rios*, 799 *F.*2d 520, 525 (9th Cir.1986) ("[W]e reaffirm the rule that increasing a legal sentence after it has been fully served violates the Double Jeopardy Clause.").

In concluding that the Double Jeopardy Clause prevents the imposition of community supervision for life on this defendant, the majority determines that once defendant was released from probation, he had an expectation in the finality of the original sentence. They reach that conclusion by careful parsing of appellate level decisions with which they do not agree, *ante* at 309–11, 53 *A.*3d at 1218–19 (distinguishing *Horton, supra,* 331 *N.J.Super.* at 92, 751 *A.*2d 141, and *State v. Cooke,* 345 *N.J.Super.* 480, 785 *A.*2d 934 (App.Div.2001), *certif. denied,* 171 *N.J.* 340, 793 *A.*2d 718 (2002)), and by embracing the reasoning of the New York Court of Appeals that reached a result contrary to our appellate courts, *ante* at 311–12, 53 *A.*3d at 1219–20 (describing as persuasive *People v. Williams,* 14 *N.Y.*3d 198, 899 *N.Y.S.*2d 76, 925 *N.E.*2d 878, *cert. denied,* —— *U.S.* ——, 131 *S.Ct.* 125, 178 *L.Ed.*2d 242 (2010)).

The majority's reasoning, again, is flawed, both in its rejection of the precedents from our own appellate courts and in its determination to import the New York court's analysis into our jurisprudence. First, the rejection of the precedents from our Appellate Division rests on strained reasoning rather than on a

basis that would withstand scrutiny. The majority rejects the *Horton* opinion, which is virtually identical to the facts now before this Court, finding that filing a motion to correct prior to the completion of the sentence sufficed to permit the amendment to add community supervision for life after the term had been completed. *Ante* at 310–11, 53 *A*.3d at 1218–19. They reject the reasoning in *Cooke*, which reached the same conclusion, merely by commenting that defendant in that matter had cross-appealed, thus bringing the illegality of his sentence before the reviewing court. *Ante* at 310–11, 53 *A*.3d at 1218–19. The first of these explanations threatens to reduce the constitutional inquiry to happenstance, while the second overlooks the fact that "a reviewing court is not free to ignore an illegal sentence[,]" regardless of whether or not it is raised by the parties. *See State v. Moore*, 377 *N.J.Super.* 445, 450, 873 *A*.2d 587 (App.Div.), *certif. denied*, 185 *N.J.* 267, 883 *A*.2d 1063 (2005).

Instead, the majority is persuaded by the reasoning of the New York Court of Appeals, quoting with approval language from that court's *Williams* majority. *Ante* at 311–12, 53 *A*.3d at 1219–20. In doing so, the majority implicitly rejects the reasoning offered by the *Williams* dissenters, who eloquently and correctly observed:

> A defendant who *knows* that the sentence he was given is illegal and is subject to correction cannot claim to have a *legitimate expectation that the sentence will* remain uncorrected. There can be no reasonable expectation of finality in a sentence that is less severe than required by the law.... All [defendants] are, as the majority concedes, presumed to be aware that their determinate prison sentence[s] lacking postrelease supervision are illegal and, thus, subject to correction. Therefore, none may claim objectively good reason to believe that his sentence would not be corrected.... A defendant who was "mistakenly sentenced to a lesser term than he agreed to" does not "acquire a vested interest in the error so that it would be unfair, under the double jeopardy clause, to correct the error and make the defendant serve out the term of his own sentencing agreement."

> [*Williams, supra*, 899 *N.Y.S.*2d 76, 925 *N.E.*2d at 896 (Pigott, J., dissenting) (emphasis in original) (citations omitted).]

Not only do I find the reasoning expressed in the *Williams* dissent to be more persuasive, but it seems to me that, in reaching

its conclusion, the majority of this Court has altered the fundamental constitutional inquiry from legitimate expectation of finality into mere, subjective expectation of finality. The simple fact of the matter is that when the sentence imposed is illegal, when it omits a term or condition that the Legislature has mandated be imposed on all like offenders, there can be no legitimate expectation that it is final, even once it has been served to its completion. Although it is entirely true that this offender may have subjectively believed that the sentence was fully served, he knew when he signed the plea forms, forms that he discussed at length with his attorney, that community supervision for life was an integral part of the mandatory sentence for this crime. Unlike the majority, I see no ground on which to elevate a plainly illegal sentence into a final and inalterable one merely because defendant has completed a term that should not have been imposed in the first place.

## III.

Because I cannot agree with the majority's conclusion that community supervision for life is punitive rather than regulatory in its intent and operation, and because I cannot agree that defendant could have a legitimate expectation of finality in the illegal sentence imposed on him, I would conclude that there is no constitutional impediment to the correction of his sentence to include the community supervision for life requirement. I would therefore reverse the judgment of the Appellate Division and reinstate the corrected Judgment of Conviction imposed by the Law Division. Because the majority has made two fundamental errors in reaching the opposite conclusion, I respectfully dissent.

*For affirmance and remandment*—Chief Justice RABNER and Justices LaVECCHIA and ALBIN and Judge WEFING (temporarily assigned)—4.

*For reversal and reinstatement*—Justices HOENS and PATTERSON—2.