NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5383-13T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ERNEST JONES, a/k/a EARNEST
JONES, ERNEST EVERET JONES,
and ERNEST EVERETT JONES,

    Defendant-Appellant.

---

> **APPROVED FOR PUBLICATION**
>
> **January 19, 2016**
>
> **APPELLATE DIVISION**

Argued December 7, 2015 - Decided January 19, 2016

Before Judges Messano, Carroll, and Sumners.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Docket No. 13-06-00635.

John Douard, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Mr. Douard, of counsel and on the briefs).

Jeffrey P. Mongiello, Deputy Attorney General, argued the cause for respondent (John J. Hoffman, Acting Attorney General, attorney; Mr. Mongiello, of counsel and on the brief).

The opinion of the court was delivered by

CARROLL, J.A.D.

In <u>Riley v. New Jersey State Parole Board</u>, 219 <u>N.J.</u> 270 (2014), a divided Supreme Court determined that retroactive application of the monitoring and supervision requirements of the Sex Offender Monitoring Act (SOMA), <u>N.J.S.A.</u> 30:4-123.89 to -123.95, to a convicted sex offender who had completely served his sentence and was released under no form of parole supervision, violated the Ex Post Facto Clauses of the United States and New Jersey Constitutions. Left unanswered in <u>Riley</u> was whether those ex post facto provisions similarly apply to a defendant who was placed on either community supervision for life (CSL) or parole supervision for life (PSL) prior to the enactment of SOMA, and who was later subjected to the additional condition of Global Position Satellite (GPS) monitoring for the duration of his parole supervision. <u>Id.</u> at 291. We address that unresolved issue in the present appeal.

## I.

In September 1999, defendant Ernest Jones was convicted of second-degree sexual assault, <u>N.J.S.A.</u> 2C:14-2b. He was sentenced to a five-year term of imprisonment in February 2000. Additionally, "Megan's Law"[1] and CSL applied to defendant's sentence.

---

[1] "Megan's Law", <u>L.</u> 1994, <u>c.</u> 127 to 134, established a system of registration and community notification for certain sex

(continued)

Defendant was released from prison in December 2002. Following his release, defendant was convicted of violating the conditions of his CSL eight times prior to the conviction that is the subject of the present appeal. On August 14, 2012, while defendant was serving a one-year prison term for his eighth CSL conviction, the New Jersey State Parole Board served him with "Notice of Imposition of Special Condition of Global Positioning System Monitoring (G.P.S.) Participation." The notice stated that a determination had been made to refer defendant for participation in the GPS program based on the following:

> Since beginning CSL supervision on 12-15-02 [defendant has] been charged nine times with violating the conditions of supervision. Of those nine [defendant was] convicted eight times with the ninth being merged with the eighth. The violations on those complaints resulted from [defendant] not reporting, not participating in random drug and alcohol screening, not residing at an approved

(continued)
offenders, and set forth various sentencing and community supervision requirements pertaining to such offenders. N.J.S.A. 2C:43-6.4 was also adopted as part of Megan's Law, and provided that a judge imposing sentence on a person convicted of certain designated sexual offenses "shall include" a special sentence of community supervision for life. See L. 1994, c. 130. A 2003 amendment replaced all references to "community supervision for life" with "parole supervision for life." See State v. Perez, 220 N.J. 423, 429 (2015) (citing L. 2003, c. 267, § 1, eff. Jan. 14, 2004). Because defendant committed this crime before these revisions were enacted, he remains under the former designation, community supervision for life. N.J.A.C. 10A:71-6.11(a).

residence, admission of alcohol and CDS use and [noncompliance] with counseling.

The notice informed defendant that he had the right to contest the referral and to submit a written statement explaining his reasons for contesting it. It further indicated that if defendant chose to contest the referral, the matter would then be reviewed by the Director of the Division of Parole and the Chairman of the State Parole Board. Defendant signed the notice, and marked the box next to the statement "I contest the allegation or the basis that supports the rationale for the referral to the G.P.S. program." As the basis for his protest, defendant submitted a one-line written statement explaining "[b]ecause [] the [c]ourts didn't refer[] me to be on this program."

On August 22, 2012, the Chairman of the Parole Board adopted the referral. In its final decision, the Board noted defendant's eight prior convictions for CSL violations and determined that "GPS offers [defendant] the best chance . . . to not re-offend while optimizing public safety." The Board elaborated that:

> During his time under CSL supervision, [defendant] has repeatedly absconded from supervision. His other violations of CSL conditions include failure to report as instructed, failure to reside at an approved address, residing with minors without approval, failure to refrain from alcohol

use, failure to participate in an outpatient alcohol counseling program, failure to participate in sex offender counseling and failure to participate in alcohol and drug screening. [Defendant's] adjustment to community supervision has been poor, and he has not made any progress toward a successful reentry back into the community.

[Defendant] is a flight risk at all times while in the community, and should he abscond again from supervision, the Division of Parole would be unaware of his whereabouts and activities, which may include contact with minors and alcohol use, thereby making him a threat to public safety. Therefore, GPS monitoring is being recommended as a way to deter [defendant] from absconding from supervision, to deter him from frequenting areas where minors mainly or exclusively congregate, to help ensure that [defendant] is residing full-time at his approved residence and not at locations unknown to and unapproved by the Division of Parole and to assist the Division of Parole to more effectively supervise [defendant] in the community.

Defendant did not appeal the final agency decision. Rather, immediately prior to his release, defendant signed a notice of conditions for the GPS monitoring program. The November 1, 2012 notice informed defendant that:

Pursuant to the "Sex Offender Monitoring Act," P.L. 2005 c. 189, which was enacted on August 6, 2007, you shall be monitored under the . . . GPS Monitoring Program. The GPS Monitoring Program requires that your physical location be monitored 24 hours a day/7 days a week. The Division of Parole of the State Parole Board administers the GPS Monitoring Program. You shall adhere to the conditions cited below. Your failure to

comply with any of the conditions shall constitute a crime of the third degree and is punishable by up to five (5) years in prison and/or a fine of $15,000.

The notice went on to set forth a detailed list of eleven conditions that defendant was required to abide by while on the GPS program.

On November 17, 2012, defendant purposely removed his tracking device. He then remained at large until he was arrested on July 29, 2013. Consequently, he was charged in Gloucester County Indictment No. 13-06-00635 with fourth-degree violation of CSL, N.J.S.A. 2C:43-6.4d, by failing to comply with the GPS monitoring system.

At trial, the parties stipulated that

for all relevant dates in this matter, [CSL] had been imposed upon defendant as a condition of a sentence, and on November 1[], 2012, as part of [CSL], [] defendant was subject to the GPS Monitoring program. [] Defendant knew he was subject to the conditions of both [CSL] and the GPS Monitoring program.

Following the two-day trial, at which defendant testified, the jury convicted him of the CSL violation. On June 20, 2014, defendant was sentenced to an eighteen-month prison term, with a nine-month period of parole ineligibility.

In this appeal, defendant does not challenge the sufficiency of the evidence supporting his conviction. Rather, he advances two issues for our consideration:

POINT I

THE RETROACTIVE APPLICATION OF THE SEX OFFENDER MONITORING ACT TO MR. JONES MORE THAN TEN YEARS AFTER HIS RELEASE FROM PRISON ON COMMUNITY SUPERVISION FOR LIFE VIOLATES HIS RIGHTS UNDER THE EX POST FACTO CLAUSES OF THE UNITED STATES CONSTITUTION AND NEW JERSEY CONSTITUTION (NOT RAISED BELOW)

POINT II

MR. JONES'S DUE PROCESS RIGHTS WERE VIOLATED WHEN THE STATE PLACED HIM ON CONTINUOUS GPS MONITORING WITHOUT PROVIDING ANY BASIS FOR THE SURVEILLANCE AND WITHOUT PROVIDING ANY HEARING WHERE HE COULD CHALLENGE THE GPS MONITORING THROUGH CROSS-EXAMINATION AND ASSISTANCE OF COUNSEL

II.

We begin by reviewing the statutory framework that guides our analysis. "[CSL] has its statutory source in <u>N.J.S.A.</u> 2C:43-6.4, the Violent Predator Incapacitation Act. The statute is one component of a series of laws that are referred to generally as Megan's Law." <u>State v. Schubert</u>, 212 <u>N.J.</u> 295, 305 (2012). Unlike the registration and notification requirements embodied in Megan's Law, which are deemed to be remedial and not punitive, <u>Doe v. Poritz</u>, 142 <u>N.J.</u> 1 (1995), the CSL statute is

"punitive rather than remedial at its core."  Schubert, supra, 212 N.J. at 308.

At the time of defendant's 2000 sentence that subjected him to CSL, N.J.S.A. 2C:43-6.4 provided in pertinent part:

> (a) Notwithstanding any provision of law to the contrary, a court imposing sentence on a person who has been convicted of . . . sexual assault . . . shall include, in addition to any sentence authorized by this Code, a special sentence of community supervision for life.
>
> (b) . . . Persons serving a special sentence of community supervision shall be supervised as if on parole and subject to conditions appropriate to protect the public and foster rehabilitation.
>
> . . . .
>
> (d) A person who violates a condition of a special sentence of community supervision without good cause is guilty of a crime of the fourth degree.
>
> [Violent Predator Incapacitation Act of 1994, L. 1994, c. 130, § 2, eff. Oct. 31, 1994.]

CSL is "designed to protect the public from recidivism by defendants convicted of serious sexual offenses." Jamgochian v. N.J. State Parole Bd., 196 N.J. 222, 237-38 (2008) (quoting Sanchez v. N.J. State Parole Bd., 368 N.J. Super. 181 (App. Div.), certif. granted, 182 N.J. 140 (2004)). "To that end, defendants subject to CSL are supervised by the Parole Board and face a variety of conditions beyond those imposed on non-sex-

offender parolees." Perez, supra, 220 N.J. at 437. N.J.A.C. 10A:71-6.11 sets forth the general conditions that attach to sex offenders subject to CSL. These include approval of their residence and any change of residence, N.J.A.C. 10A:71-6.11(b)5-6; and approval of employment and notice of any change in employment status, N.J.A.C. 10A:71-6.11(b)14-15. They are also subject to random drug and alcohol testing, N.J.A.C. 10A:71-6.11(b)13; a yearly polygraph examination, N.J.A.C. 10A:71-6.11(b)21; imposition of a curfew, N.J.A.C. 10A:71-6.11(b)17; and restrictions on the use of a computer and the internet, N.J.A.C. 10A:71-6.11(b)22. See Perez, supra, 220 N.J. at 437; Schubert, supra, 212 N.J. at 306.

"In addition to those general conditions, special conditions may be imposed to meet the individual's particular situation." Schubert, supra, 212 N.J. at 306. In such instances, N.J.A.C. 10A:71-6.11(k) provides:

> Additional special conditions may be imposed by the District Parole Supervisor, an Assistant District Parole Supervisor or the designated representative of the District Parole Supervisor when it is the opinion that such conditions would reduce the likelihood of recurrence of criminal behavior. The offender and the Board shall be given written notice upon the imposition of such conditions.

Notably, the regulations specifically authorize the imposition of a special condition of electronic monitoring for those

offenders serving a special sentence of community or parole supervision for life.  <u>N.J.A.C.</u> 10A:72-10.1(a)3-(b).[2]

SOMA was enacted effective August 6, 2007, and governs the continued monitoring of serious and violent sexual offenders. The legislative findings underlying its adoption are set forth in the statute, as follows:

> a. Offenders who commit serious and violent sex crimes have demonstrated high recidivism rates and, according to some studies, are four to five times more likely to commit a new sex offense than those without such prior convictions, thereby posing an unacceptable level of risk to the community.
>
> b. Intensive supervision of serious and violent sex offenders is a crucial element in both the rehabilitation of the released inmate and the safety of the surrounding community.
>
> c. Technological solutions currently exist to provide improved supervision and behavioral control of sex offenders following their release.
>
> d. These solutions also provide law enforcement and correctional professionals with new tools for electronic correlation of the constantly updated geographic location of supervised sex offenders following their release with the geographic location of

---

[2]  <u>See also</u>  <u>N.J.A.C.</u>  10A:72-2.4(b)3(ii) (authorizing, upon violation of parole by a regular parolee, the imposition of a special condition requiring "[a]ssignment to and successful completion of the electronic monitoring program, wherein electronic monitoring serves to address violations of conditions of supervision").

A-5383-13T1

reported crimes, to possibly link released offenders to crimes or to exclude them from ongoing criminal investigations.

e. Continuous 24 hours per day, seven days per week, monitoring is a valuable and reasonable requirement for those offenders who are determined to be a high risk to reoffend, were previously committed as sexually violent predators and conditionally discharged, or received or are serving a special sentence of community or parole supervision for life. A program to monitor these sex offenders should be established.

[N.J.S.A. 30:4-123.90.]

SOMA authorizes GPS monitoring of those offenders whose "risk of re-offense has been determined to be high [under Megan's Law],"[3] and who have been deemed appropriate for continued GPS monitoring by the Chairperson of the State Parole Board. N.J.S.A. 30:4-123.91a(1)-(2); N.J.A.C. 10A:72-11.1. Additionally, the individual to be monitored must fall into one of several categories, which include offenders who have been sentenced to CSL or PSL. N.J.S.A. 30:4-123.91a(2)(b); N.J.A.C. 10A:72-11.1(a)2ii. Failure to comply with SOMA's monitoring requirements, N.J.S.A. 30:4-123.94, and interference with a monitoring device, N.J.S.A. 30:4-123.95, are punishable as third-degree crimes.

---

[3] N.J.S.A. 2C:7-8 describes the factors and considerations that are relevant to determining the risk of re-offense.

III.

A.

Defendant contends for the first time on appeal that retroactive application of SOMA's GPS monitoring program to him violates the Ex Post Facto Clauses of both the Federal and New Jersey Constitutions, U.S. Const. art. I, § 10; N.J. Const. art. IV, § 7, ¶ 3. Specifically, relying on Riley, supra, defendant argues that the GPS monitoring program retroactively enhances the penal consequences of his existing CSL sentence and thereby violates the ex post facto prohibition.

"Generally, an appellate court will not consider issues, even constitutional ones, which were not raised below." State v. Galicia, 210 N.J. 364, 383 (2012). "[A]ny error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result." Id. at 386 (quoting R. 2:10-2). Here, while we address the constitutional issue now raised by defendant in light of the Court's recent ruling in Riley, we nonetheless find it insufficient to disturb the jury's verdict for the reasons that follow.

In Riley, supra, 219 N.J. at 275, the Parole Board sought to apply the GPS monitoring provisions of SOMA to Riley, who had committed a predicate sexual offense in 1986, prior to the

12                                                      A-5383-13T1

enactment of the CSL statute. Riley was released from prison in 2009 under no form of parole supervision, although he was required to comply with the registration and notification provisions of Megan's Law. Id. at 274. Six months later, and more than twenty years after he committed his last offense, the Parole Board advised Riley that he was subject to SOMA's GPS monitoring program. Ibid.

Riley filed an appeal with the Parole Board, arguing that the retroactive application of SOMA to him, based on his 1986 conviction, violated the bar against ex post facto laws. Ibid. In its analysis, the Court focused on "whether the law, as retrospectively applied, imposes additional punishment to an already completed crime." Id. at 285 (citing Kansas v. Hendricks, 521 U.S. 346, 370, 117 S. Ct. 2072, 2086, 138 L. Ed. 2d 501, 520 (1997)). For purposes of its analysis, the Court "accept[ed] that the Legislature, in passing SOMA, intended to enact a remedial, regulatory scheme that was civil and nonpunitive in nature." Id. at 292. Nonetheless, by a four-to-three majority, the Court "conclude[d] that SOMA's adverse effects are so punitive . . . as to negate the State's intent to deem it only civil and regulatory." Id. at 297 (alteration in original) (quoting Smith v. Doe, 538 U.S. 84, 92, 123 S. Ct. 1140, 1147, 155 L. Ed. 2d 164, 176 (2003)).

The majority noted that "[CSL] and its corollary [PSL] are merely indefinite forms of parole." Id. at 288. It recognized that SOMA shares these same essential characteristics. "SOMA looks like parole, monitors like parole, restricts like parole, and is run by the Parole Board. Calling this scheme by another name does not alter its essential nature." Id. at 294. Accordingly, the Court held that the retroactive application of SOMA to Riley violated the Ex Post Facto Clauses of the Federal and State Constitutions, and remanded to the Parole Board for enforcement of its judgment. Id. at 298.

Importantly, the Court noted that the case did not concern "a defendant who was subjected to the additional condition of GPS monitoring for the duration of his probation or parole." Id. at 291. It further stated: "[w]e do not suggest that GPS monitoring may not be added as a condition of parole supervision that is ongoing — that is, while the offender is still serving his sentence." Id. at 290. We view this as a critical distinction.

Unlike Riley, in the present case defendant was still serving his CSL sentence when the Parole Board sought to impose SOMA's GPS monitoring program as a special condition. As noted, "[a]n offender serving a special sentence of [CSL] shall be supervised by the Division of Parole as if on parole and subject

14

to any special conditions established by the appropriate Board panel," as well as the numerous general conditions set forth in N.J.A.C. 10A:71-6.11(b).  The Parole Board is specifically authorized to impose special conditions of supervision when "it is [of] the opinion that [they] would reduce the likelihood of recurrence of criminal behavior."  N.J.A.C. 10A:71-6.11(k).  Substantially similar regulations also apply to offenders sentenced to PSL.  See N.J.A.C. 10A:71-6.12.  The Parole Board can impose a special condition of electronic monitoring for offenders serving a special sentence of CSL or PSL, N.J.A.C. 10A:72-10.1, separate and apart from the regulations that authorize enrollment of those offenders in the GPS monitoring program.  See N.J.A.C. 10A:72-11.1 to -11.6.

To the extent it may be relevant, we recognize that "CSL and PSL are distinct special post-sentence supervisory schemes for certain sex offenders."  See Perez, supra, 220 N.J. at 427-28 (noting that a defendant subject to CSL who is sentenced to an extended term is eligible for parole in instances where those on PSL are not).  Nonetheless, for present purposes, we discern no meaningful distinction.  CSL and PSL are "corollary" sentencing schemes, Riley, supra, 219 N.J. at 288, and are penal in nature, Perez, supra, 220 N.J. at 443.  As noted above, offenders sentenced under CSL and PSL are both subject to the

supervision of the Division of Parole "as if on parole," and both are subject to substantially similar general and special parole conditions. When deemed appropriate, both are also eligible to be monitored under SOMA. N.J.S.A. 30:4-123.91a(2)(b); N.J.A.C. 10A:72-11.1(a)2ii.

Here, unlike the petitioner in Riley, defendant was already subject to the constraints attendant to parole supervision when the special condition of GPS monitoring was imposed. Additionally, defendant had previously violated CSL eight times, including periods when he had absconded. In contrast, Riley had committed no other offenses. It is beyond cavil that defendant was already an eligible candidate for electronic monitoring when the GPS monitoring condition was imposed. While arguably the duration of the period that defendant may be subject to GPS monitoring is longer than traditional electronic monitoring,[4] we do not classify any added burden attendant to the GPS program as sufficiently punitive to constitute an ex post facto violation. Indeed, in some ways it may prove less onerous than the present electronic monitoring, as "we have every reason to believe that the dimensions of the system, while not presently conspicuous, will only become smaller and less cumbersome as technology progresses." Doe v. Bredesen, 507 F.3d 998, 1000, 1005 (6th

---

[4] See N.J.A.C. 10A:72-10.2.

Cir. 2007), reh'g en banc denied, 521 F.3d 680 (6th Cir. 2008), cert. denied, 555 U.S. 921, 129 S. Ct. 287, 172 L. Ed. 2d 210 (2008) (rejecting an ex post facto challenge to the Tennessee Serious and Violent Sex Offender Monitoring Pilot Project Act, which "subject[s] a convicted sexual offender to a satellite-based monitoring program for the duration of his probation").

Moreover, the GPS monitoring condition does not increase the length of defendant's CSL sentence. Nor does it restrict defendant's movements or travel in any material manner beyond the restrictions attendant to his CSL supervision. Importantly, defendant was only charged with violating CSL, a fourth-degree crime, consistent with the punishment established in N.J.S.A. 2C:43-6.4d at the time of his 2000 sentence. Defendant was not charged under statutes criminalizing violations of SOMA, in which event the result we reach might well be different. See N.J.S.A. 30:4-123.94 (third-degree failure to comply with terms of GPS monitoring); N.J.S.A. 30:4-123.95 (third-degree tampering with GPS device).

We also distinguish this case from Perez. There, defendant's CSL sentence was improperly enhanced by application of post-2003 amendments to N.J.S.A. 2C:43-6.4. Perez, supra, 220 N.J. at 442. N.J.S.A. 2C:43-6.4(e), for example, now requires the imposition of a mandatory extended term without

parole if certain enumerated offenses are committed while the actor is on PSL. A similarly-situated defendant on CSL status is not subject to a mandatory extended term sentence and remains parole-eligible. Id. at 437-38. In contrast to Perez, in the present case, defendant's sentence was not so enhanced.

Summarizing, defendant was sentenced to CSL in 2000. Accordingly, he fell within the supervision of the Parole Division, which has the authority to impose general and special conditions to both ensure the protection of the public and reduce the likelihood that defendant will re-offend. Defendant demonstrated a virtually uninterrupted pattern of violating his CSL, including a history of absconding during which absences his whereabouts could not be ascertained. The GPS monitoring program represents a technological upgrade over the special condition of electronic monitoring for convicted CSL offenders that the parole authorities no doubt have the authority to impose. We are not persuaded that the GPS monitoring materially increased defendant's punishment. Nor do we conclude that this special condition is significantly more onerous or punitive than electronic monitoring or any other regulatory requirement that may be imposed as part of defendant's CSL sentence. Accordingly, we find no ex post facto violation.

As a component of his ex post facto argument, defendant contends that his counsel was ineffective for failing to move to dismiss the indictment on such grounds. He argues that counsel should have been aware of our September 22, 2011 decision in Riley[5] that formed the basis for such a successful challenge to the indictment.

To prove ineffective assistance of counsel, a defendant must demonstrate a reasonable likelihood of success under the test set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). That is, the defendant must show: (1) the deficiency of his counsel's performance and (2) prejudice to his defense. Id. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693; see also State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-pronged analysis in New Jersey).

Generally, we do not entertain ineffective assistance of counsel claims on direct appeal "because such claims involve allegations and evidence that lie outside the trial record." State v. Preciose, 129 N.J. 451, 460 (1992). The appropriate procedure for their resolution commonly is not direct appeal, but rather a post-conviction relief (PCR) application attended

---

[5] Riley v. New Jersey State Parole Bd., 423 N.J. Super. 224 (App. Div. 2011).

by a hearing if a prima facie showing of ineffectiveness is shown. Id. at 460, 463. Where defendant's claim of ineffectiveness relates solely to his allegation of a substantive legal error contained completely within the trial record, however, we can consider it. See State v. Quezada, 402 N.J. Super. 277, 280 (App. Div. 2008).

Here, since defendant presents an entirely legal issue, we opt to address his claim of ineffective assistance of counsel. Upon doing so, we conclude that defendant is unable to satisfy Strickland's prejudice prong. Even had counsel moved to dismiss the indictment on the grounds that the GPS monitoring requirement constituted an ex post facto violation, such motion would have been unsuccessful, for the reasons we have expressed above.

C.

Finally, defendant contends that his due process rights were violated when he was subjected to GPS monitoring without any advance notice or opportunity to be heard. We disagree.

It is well-settled that "parolees, probationers, and even prisoners have liberty interests that implicate the commands of due process." Jamgochian, supra, 196 N.J. at 240. "The minimum requirements of due process . . . are notice and the opportunity to be heard." Doe v. Poritz, supra, 142 N.J. at 106.

"[T]he requirements of due process are . . . flexible, calling for such procedural protections as the situation demands. Simply put, not all situations calling for procedural safeguards call for the same kind of procedure." Jamgochian, supra, 196 N.J. at 240 (quoting State ex rel. D.G.W., 70 N.J. 488, 502 (1976)).

> In many cases in which the supervised offender wishes to contest the matter, due process will be satisfied by giving him both specific notice of the claimed misconduct or improper behavior and the opportunity to respond by letter with supporting attachments, such as certifications or affidavits. To merit a hearing, the supervised offender must deny the allegations or contest the conclusions to be drawn from the allegations or the rationale supporting the [condition sought to be imposed]. A community-supervised-for-life offender is not shielded, as is the accused in a criminal case, by the presumption of innocence.
>
> [Id. at 247-48.]

A hearing is generally required only when there are material facts in dispute that need to be resolved by credibility determinations. Id. at 248-49.

In the present case, on August 14, 2012, the Parole Board served defendant with written notice of its intention to impose GPS monitoring as a special condition of his CSL. The notice clearly specified that the proposed action was being taken based on defendant's eight convictions for CSL violations, and

detailed the nature of those violations. The notice also clearly advised defendant that he had the right to contest the proposed monitoring, and set forth the procedure for him to do so.

In accordance with the notice, defendant submitted a written statement in which he contested implementation of the GPS monitoring "[b]ecause [] the courts didn't refer [him] to be on this program." Defendant did not dispute his eight prior convictions, or the facts underlying those convictions. In short, he raised no factual or credibility dispute that required a hearing.

On August 22, 2012, the Parole Board issued its final decision imposing GPS monitoring "as a way to deter [defendant] from absconding" and as a means to ensure compliance with the other conditions of his CSL. Unlike the petitioners in Riley and Jamgochian, defendant did not appeal the Parole Board's decision. Rather, by ridding himself of the monitoring device he chose to engage in self-help, a remedy that is generally disfavored. See e.g., State v. Crawley, 187 N.J. 440, 459, cert. denied, 549 U.S. 1078, 127 S. Ct. 740, 166 L. Ed. 2d 563 (2006); State v. Gandhi, 201 N.J. 161, 190 (2010).

Defendant retains the right to seek administrative relief from the special condition of his GPS monitoring. See N.J.A.C.

22

10A:72-11.2(h) (setting forth the procedure to challenge the basis for GPS monitoring); N.J.A.C. 10A:72-11.4 (requiring periodic review to assess whether GPS monitoring remains appropriate); N.J.A.C. 10A:72-11.6 (establishing appeal procedure). Nothing in our decision should be deemed to preclude defendant from pursuing any available administrative remedy. We express no opinion on the merits of such an application should it be filed.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION