SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

### State v. Hakum Brown; State v. Rodney Brown (A-39-19) (083353)

**Argued October 14, 2020 -- Decided January 25, 2021**

**LaVECCHIA, J., writing for the Court.**

These consolidated appeals present a common legal issue: whether state or federal constitutional ex post facto prohibitions permit defendants to be charged with and convicted of the enhanced third-degree offense of failure to comply with sex offender registration requirements when each defendant's registration requirement arose from a conviction that occurred before the penalty for noncompliance was raised a degree.

In 1995, Rodney Brown (R.B.) was convicted of sexual assault. In 2000, Hakum Brown (H.B.) was convicted of sexual assault and endangering the welfare of a child. As a result of those predicate convictions, H.B. and R.B. were subject to the sex offender registration requirements imposed by Megan's Law. At the time of H.B.'s and R.B.'s sex-offender convictions, failure to comply with the registration requirements was punishable as a fourth-degree offense. However, in 2007, the Legislature upgraded failure to register to a third-degree offense. In 2014, H.B. failed to timely register with his local police department. R.B. similarly failed to register in 2015. Each was charged with third-degree failure to register.

H.B. pleaded guilty but appealed, asserting there is an ex post facto violation in being charged with third-degree failure to register when, at the time of his predicate sex-offender conviction, failure to register was only a fourth-degree offense. R.B. pleaded not guilty. He moved to dismiss his indictments on ex post facto grounds, and the trial court granted R.B.'s motion in its entirety. The State appealed the dismissal of R.B.'s indictments. The Appellate Division consolidated the State's appeal in R.B.'s matter with H.B.'s appeal from his conviction. Relying on State v. Timmendequas, 460 N.J. Super. 346 (App. Div. 2019), the appellate court reversed H.B.'s conviction and affirmed the dismissal of R.B.'s indictment. The Court granted certification. 240 N.J. 426 (2020).

**HELD:** Defendants suffered no ex post facto violation as a result of being charged with failure-to-register offenses bearing the increased degree. The Legislature is free to increase the penalty for the offense of failure to comply with the regulatory registration requirement -- which is separate and apart from defendants' predicate sex offenses -- without violating ex post facto principles as to those predicate offenses.

1

1.  In <u>Doe v. Poritz</u>, the Court found the Megan's Law registration requirement to be regulatory and remedial rather than punitive and therefore held that Megan's Law's retroactive application to persons who had already been convicted of eligible sex offenses did not subject past offenders to additional punishment and did not offend the Ex Post Facto Clauses.  142 N.J. 1, 75 (1995).  (pp. 9-12)

2.  Two findings must be made for a law to violate the constitutional prohibition on ex post facto laws.  The court must determine:  first, whether the law is retrospective, meaning it applies to events occurring before its enactment or changes the legal consequences of acts completed before its effective date; second, whether the law, as retrospectively applied, imposes additional punishment to an already completed crime.  (pp. 12-13)

3.  <u>Doe</u> placed the registration scheme decidedly in the nonpunitive category as a civil, administrative consequence.  That the violation of that regulatory scheme is enforced through separate criminal charges when and if the violation occurs does not make the registration requirement itself penal.  The registration requirement is not part of the penal sentence for the predicate sex offense.  Distilled to its essence, registration is retroactive but not punitive.  Prosecution for failing to register, however, is different.  It addresses a separate crime and is punitive but not retroactive.  Viewed accordingly, just as the Legislature was permitted to affix a criminal penalty for the prospective violation denominated as failure to register, so too may it prospectively enhance the degree of such a penalty.  Federal courts and other state supreme courts have similarly held that failure to register is an offense distinct from the original underlying sex offense.  (pp. 13-17)

4.  Megan's Law imposed a term of community supervision for life (CSL) on individuals convicted of certain sex offenses.  In 2003, the Legislature replaced CSL with parole supervision for life (PSL), a more restrictive post-release regime.  In <u>State v. Perez</u>, 220 N.J. 423 (2015), the Court considered whether the Legislature could retroactively convert an offender's sentence of CSL to a sentence of PSL.  Stressing that both "CSL and PSL were and are intended to be penal rather than remedial post-sentence supervisory schemes," the Court held that such retroactive enhancement of an offender's sentence violated the Ex Post Facto Clause.  <u>Id.</u> at 441-42.  (pp. 17-19)

5.  And in <u>State v. Hester</u>, 233 N.J. 381 (2018), the Court considered whether -- after a 2013 amendment that raised the degree of violation of CSL and mandated conversion from CSL to PSL -- those heightened sanctions could be imposed on individuals who began serving CSL prior to the amendment.  The Court concluded that the defendants' CSL violations should not be viewed as independent crimes but as "violations of the general conditions of their supervised release" that were "integral parts" of the defendants' sentences.  <u>Id.</u> at 397.  By enhancing the penalty for violating those requirements, the Legislature had impermissibly sought to "materially alter[] defendants' prior sentences to their disadvantage."  <u>Id.</u> at 398.  Increasing the defendants' penalty for violating CSL violated the Ex Post Facto Clause, just as in <u>Perez</u>.  <u>Id.</u> at 398.  (pp. 19-21)

6.  The Court stresses the foundational reasoning of <u>Doe v. Poritz</u>.  <u>Doe</u> recognized the registration requirement as an administrative obligation rather than a penal consequence of the original predicate sex offense; the fact that violations of that administrative obligation are themselves separately punishable does not alter the nature of the obligation itself.  Thus, imposition of that obligation did not involve a retroactive increase in punishment for the predicate crime.  And, by extension, increasing the penal consequences for a violation of that obligation is similarly distinct from the punishment imposed for the predicate crime.  (pp. 21-22)

7.  <u>Hester</u> involved aspects of the application of CSL and PSL, which are not administrative obligations, but rather punitive measures imposed as part of the supervised release of an offender convicted of a qualifying offense.  <u>Doe</u> is the most relevant to the circumstances present here, and adherence to <u>Doe</u>'s determination that registration is not punitive should have precluded reliance on cases dealing with punitive consequences such as PSL, CSL, and the requirements of the Sex Offender Monitoring Act, <u>see</u> <u>Riley v. State Parole Bd.</u>, 219 N.J. 270 (2014), in the context of a challenge predicated on the registration requirement.  (pp. 22-25)

8.  The Court disapproves of the analysis of <u>Timmendequas</u> and reverses the Appellate Division's decision in this matter, which relied on <u>Timmendequas</u>.  If the Legislature has the authority to create new penalties for noncompliance with administrative obligations, as it did in Megan's Law, it would be incongruous if it could not prospectively upgrade the penalty for violating an existing administrative obligation.  (p. 25)

**REVERSED.  R.B.'s matter is REMANDED to the trial court.  H.B.'s conviction and sentence are REINSTATED.**

**JUSTICE ALBIN, dissenting,** does not see any basis to treat retroactively imposed increased punishments for violations of CSL requirements and Megan's Law registration requirements differently for ex post facto purposes.  Justice Albin notes that both the CSL requirements and the Megan's Law registration requirements are conditions imposed at the time of sentencing for a defendant's predicate sex offense; both mandate lifetime compliance; and violations of both are punishable as crimes, subjecting offenders to potential prison terms.  In Justice Albin's view, the Court should not retroactively aggravate the penalty for failing to register based on an arbitrary distinction between CSL and Megan's Law registration.  Justice Albin concludes that the 2007 amendment increased the punishment for defendants' violation of a condition of their sentences -- the registration requirement -- and therefore materially altered their sentences to their disadvantage in violation of the prohibition on ex post facto laws.

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE LaVECCHIA's opinion. JUSTICE ALBIN filed a dissent.**

# SUPREME COURT OF NEW JERSEY
## A-39 September Term 2019
### 083353

State of New Jersey,

Plaintiff-Appellant,

v.

Hakum Brown a/k/a Hakeem Brown,

Defendant-Respondent.

_____

State of New Jersey,

Plaintiff-Appellant,

v.

Rodney Brown,

Defendant-Respondent.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| October 14, 2020 | January 25, 2021 |

Jennifer E. Kmieciak, Deputy Attorney General, argued the cause for appellant (Gurbir S. Grewal, Attorney General, attorney; Jennifer E. Kmieciak, of counsel and on the briefs).

1

James K. Smith, Jr., Assistant Deputy Public Defender, argued the cause for respondents (Joseph E. Krakora, Public Defender, attorney; James K. Smith, Jr., of counsel and on the briefs).

Molly Linhorst argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey Foundation, attorneys; Molly Linhorst, Alexander Shalom, and Jeanne LoCicero, on the brief).

JUSTICE LaVECCHIA delivered the opinion of the Court.

New Jersey's law governing the sex offender registration and notification system, N.J.S.A. 2C:7-1 to -23, is commonly known as Megan's Law, after the victim of a tragedy that spurred the law's passage. Enacted in 1994, Megan's Law imposed a registration requirement on convicted sex offenders and, in its original form, made failure to register chargeable as a fourth-degree offense. The statutory scheme has been amended a number of times. Pertinent here is the 2007 amendment through which the Legislature prospectively elevated failure to register to a third-degree offense.

These consolidated criminal appeals present a common legal issue: whether state or federal constitutional ex post facto prohibitions permit defendants to be charged with and convicted of the enhanced third-degree offense of failure to comply with sex offender registration requirements when each defendant's registration requirement arose from a conviction that

2

occurred before the penalty for registration noncompliance was raised a degree.

For both defendants in this appeal, failure to register was punishable as a fourth-degree offense at the time of the predicate convictions that subjected each to Megan's Law's requirements. However, defendants' failures to register upon release from unrelated subsequent terms of incarceration occurred <u>after</u> the increased degree in penalty took effect.

We hold that defendants suffered no ex post facto violation as a result of being charged with failure-to-register offenses bearing the increased degree. Defendants committed the charged offenses after the effective date of the 2007 amendments, of which each had fair notice. This Court has consistently regarded the Megan's Law registration requirement as a legislatively imposed regulatory consequence of committing a sex offense, as defined under Megan's Law, even though the Legislature has chosen to enforce that administrative scheme with punitive consequences. The Legislature is free to increase the penalty for the offense of failure to comply with the regulatory registration requirement -- which is separate and apart from defendants' predicate sex offenses -- without violating ex post facto principles as to those predicate offenses.

We distinguish in our holding today our prior decision in State v. Hester, 233 N.J. 381, 398 (2018), where we held that the punishment for a violation of a sentence of community supervision for life (CSL) cannot be made more onerous than it was at the time of the underlying crime under ex post facto principles because the CSL sentence is a punitive consequence of that underlying offense. In contrast, an individual who violates the registration requirement and is charged with the offense of noncompliance after the penalty increase became effective is not subjected to a prohibited retroactive increase in punishment for a past offense.

## I.

### A.

In 1995, Rodney Brown (R.B.) was convicted of second-degree sexual assault, N.J.S.A. 2C:14-2, and was sentenced to three years in prison and CSL.

In 2000, Hakum Brown (H.B.) was convicted of second-degree sexual assault and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a). H.B. was sentenced to six years in prison and CSL.

As a result of those predicate convictions, H.B. and R.B. were subject to the sex offender registration requirements imposed by Megan's Law. Specifically, upon release from incarceration, H.B. and R.B. each were required to register with the police department of the municipality in which he

4

resided.  N.J.S.A. 2C:7-2(a)(1), -2(c).  At the time of H.B.'s and R.B.'s sex-offender convictions, failure to comply with the registration requirements was punishable as a fourth-degree offense.  L. 1994, c. 133, § 2a.  However, in 2007, the Legislature upgraded failure to register to a third-degree offense.  L. 2007, c. 19, § 1 (codified at N.J.S.A. 2C:7-2(a)(3)).

Pertinent to our present analysis, on August 25, 2014, H.B. was released from incarceration on an unrelated offense but failed to timely register with his local police department.  R.B. similarly failed to register following his release from incarceration (again on an unrelated offense) on December 23, 2015.  Each was charged with third-degree failure to register under N.J.S.A. 2C:7-2(a)(3), as well as third-degree violations of CSL, N.J.S.A. 2C:43-6.4(d).

B.

H.B. pleaded guilty and was sentenced to three years' imprisonment.  He appealed his conviction, asserting there is an ex post facto violation in being charged with third-degree failure to register when, at the time of his predicate sex-offender conviction, failure to register was only a fourth-degree offense.[1]

R.B. pleaded not guilty to a parallel set of charges.  He moved to dismiss his indictments on ex post facto grounds, and the trial court granted R.B.'s

---

[1]  The State did not raise a waiver argument before either the Appellate Division or this Court, hence waiver is not an issue in this appeal.

5

motion in its entirety. In doing so, the court applied State v. F.W., 443 N.J. Super. 476 (App. Div. 2016), which held that it violated ex post facto principles to charge an individual with third-degree violations of CSL when, at the time of one's predicate sex-offense conviction, violation of CSL was a fourth-degree offense. After applying that reasoning to the CSL charges in R.B.'s indictment, the trial court determined that the logic of F.W. applied with equal force to R.B.'s indictment for third-degree failure to register.

The State appealed the dismissal of R.B.'s indictments; that appeal was stayed when we granted certification in Hester to consider the ex post facto argument in connection with the increase in offense degree for CSL violations. After we issued our decision in Hester, the State conceded that R.B. and H.B. could be charged with only a fourth-degree offense for their alleged violations of CSL. Thus, the State abandoned the portions of its appeals concerning defendants' CSL violations. With respect to the remaining common issue permeating both appeals, on July 31, 2019, the Appellate Division consolidated the State's appeal in R.B.'s matter with H.B.'s appeal from his conviction. Thus, the consolidated appeals focused solely on the increase in offense degree for defendants' failure-to-register offenses.

6

## C.

In an unpublished decision, the Appellate Division reversed H.B.'s conviction for the third-degree offense of failure to register and affirmed the dismissal of R.B.'s indictment for the same offense.

The appellate court began by reviewing the decision in Hester, homing in on its conclusion that CSL is a condition of an offender's sentence and that violations of CSL therefore relate back to the date of the predicate sex offense for ex post facto purposes. The court then referenced a recent published opinion of the Appellate Division that considered whether to apply Hester's holding in respect of CSL violations to the offense of failure to register. State v. Timmendequas, 460 N.J. Super. 346, 350 (App. Div. 2019). The Timmendequas decision, written by the same appellate panel as in the instant appeal, observed that the Legislature's intent in penalizing failure to register was punitive, even if the requirements themselves were not, and that an ex post facto analysis was therefore compelled. Id. at 355. The Timmendequas court concluded that, properly viewed, registration requirements are a condition of an offender's sentence, and the State's enhanced penalties for failure to register thus impermissibly "materially altered defendant's prior sentence to his disadvantage." Id. at 357 (alterations omitted) (quoting Hester, 233 N.J. at 398).

The appellate court followed the holding in <u>Timmendequas</u> in the instant appeal and similarly concluded that the logic of <u>Hester</u> should apply to Megan's Law's registration requirements.  Accordingly, the Appellate Division held that H.B. and R.B. could be charged with failure to register only to the extent that the law permitted at the time of their predicate sex offenses, namely as a fourth-degree offense.

The State filed a petition for certification, which this Court granted.  240 N.J. 426 (2020).[2]  We also granted amicus curiae status to the American Civil Liberties Union of New Jersey (ACLU).

## II.

Before this Court, the State maintains its position that there is no ex post facto violation in applying the 2007 amendment to N.J.S.A. 2C:7-2 to sex offenders who commit the new crime of failing to register after the effective date of the amendment.  According to the State, the violation of the civil requirement of registration is a separate offense distinct from the original conviction that was the predicate for being placed on Megan's Law.  The State maintains that applying the amendment to a post-amendment failure to register is not a retroactive increase in punishment for a past offense.

---

[2]  A motion for leave to appeal in <u>Timmendequas</u> is currently pending before this Court.

In a joint brief, defendants take the opposite view. Defendants argue that the 2007 amendment to Megan's Law, which had no purpose other than to increase the penalty for failure to register, may not be applied retroactively with respect to the predicate offense without violating the Ex Post Facto Clauses of the State and Federal Constitutions. The ACLU urges, consistent with the position of defendants, that mandatory registration under Megan's Law be viewed as part-and-parcel of defendants' sentences for their underlying offenses and that therefore, as was held in Hester for CSL, failure to register should not be regarded as a new offense. Amicus thus contends that the 2007 amendment retroactively makes the punishment more burdensome for the same offense in violation of the Ex Post Facto Clauses.

## III.

## A.

In 1994, the Legislature enacted Megan's Law, now codified at N.J.S.A. 2C:7-1 to -23, for the express purpose of establishing a sex offender registry that would "provide law enforcement with additional information critical to preventing and promptly resolving incidents involving sexual abuse and missing persons." N.J.S.A. 2C:7-1(b). The law requires any individual convicted of certain sex offenses to register with the police department of the municipality in which he or she resides. N.J.S.A. 2C:7-2(c). Megan's Law

9

further provided at the time that failure to register was punishable as a fourth-degree offense.  L. 1994, c. 133, § 2(a).  In addition, annual address verification obligations and registration requirements are imposed on a registrant who moves into or out of New Jersey or changes his or her residence.  See N.J.S.A. 2C:7-2(c), (d).[3]

In Doe v. Poritz, 142 N.J. 1 (1995), this Court upheld Megan's Law against a series of constitutional challenges.  In relevant part, this Court held the law's registration requirements could be imposed on individuals whose predicate sex offenses predated the law's passage without running afoul of State or Federal Ex Post Facto Clauses.  Id. at 75.  Integral to that holding was the conclusion that the law's registration requirements were remedial rather than punitive.  Id. at 73.  Our Court acknowledged that although the State cannot impose retroactive punishment on individuals for their past offenses, the law's registration requirements were instead a "collateral consequence" of an individual's conviction, id. at 77 n.18, which did not raise the same constitutional concerns, id. at 75.  That determination was key.  Because the

---

[3] In 2014, legislative amendments to subsection (d) increased to an offense of the third degree the penalty for failing to notify and re-register upon relocation.  Because both defendants were being released from prison when charged with their offenses in this matter, they were not charged under subsection (d), although subsection (d)'s obligations apply to them.

Court found the registration requirement to be regulatory and remedial, the Court held that Megan's Law's retroactive application to persons who had already been convicted of eligible sex offenses in this and other jurisdictions did not subject past offenders to additional punishment and did not offend the Ex Post Facto Clauses. Ibid. That foundational determination has never been shaken. This Court has consistently treated the registration requirement as a civil consequence. State v. Perez, 220 N.J. 423, 440 (2015) (describing the registration requirement as an "administrative obligation" distinct from a punitive consequence); see also Riley v. State Parole Bd., 219 N.J. 270, 297 (2014) (referring to Megan's Law as a "nonpunitive civil statute"); In re Commitment of J.M.B., 197 N.J. 563, 601 (2009) (describing Megan's Law as a "remedial, non-punitive statute[]").

In 2007, the Legislature amended Megan's Law, upgrading failure to register from a fourth-degree offense to a third-degree offense. L. 2007, c. 19, § 1. The enhanced penalties applicable to an offense graded as third degree are significant. While a fourth-degree offense carries a prison term of no greater than eighteen months, an individual convicted of a third-degree offense may be sentenced to a term of imprisonment between three and five years. N.J.S.A. 2C:43-6(a)(3) to (4). The 2007 amendments took effect on March 1, 2007. L. 2007, c. 19, § 3.

That increase in penalty for failure to register gives rise to the present ex post facto challenge.

B.

Both the New Jersey and United States Constitutions prohibit the Legislature from passing ex post facto laws. N.J. Const. art. IV, § 7, ¶ 3 ("The Legislature shall not pass any . . . ex post facto law . . . ."); accord U.S. Const. art. I, § 10, cl. 1. We have interpreted the Ex Post Facto Clause in the State Constitution in the same manner as its federal counterpart. Doe, 142 N.J. at 42. Those clauses proscribe "any statute which . . . makes more burdensome the punishment for a crime, after its commission." Beazell v. Ohio, 269 U.S. 167, 169 (1925); see also Weaver v. Graham, 450 U.S. 24, 30 (1981) (emphasizing that the Ex Post Facto Clause seeks not to guarantee "an individual's right to less punishment, but [to guard against] the lack of fair notice and [to promote] governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated"). The prohibition on ex post facto laws thus advances two primary purposes: "It assures that individuals can rely on laws until they are 'explicitly changed,' and it restricts the government from passing 'potentially vindictive legislation.'" Riley, 219 N.J. at 284 (quoting Carmell v. Texas, 529 U.S. 513, 566 (2000)).

12

Two findings must be made for a law to violate the prohibition on ex post facto laws. First, the court must determine whether "the law is 'retrospective,'" meaning "it 'appl[ies] to events occurring before its enactment' or . . . 'changes the legal consequences of acts completed before its effective date.'" Id. at 285 (first alteration in original) (quoting Miller v. Florida, 482 U.S. 423, 430 (1987)). "Second, the court must determine whether the law, as retrospectively applied, imposes additional punishment to an already completed crime." Ibid. (citing Kansas v. Hendricks, 521 U.S. 346, 370 (1997)).

## IV.

In considering the question at hand, we find that Doe v. Poritz's lantern lights the way to our conclusion.

Since this Court first upheld the Megan's Law registration of sex offenders, including sex offenders whose predicate convictions occurred prior to Megan's Law's enactment, the registration requirement has been viewed as a nonpunitive consequence of the predicate conviction, no matter when the predicate conviction occurred. Doe, 142 N.J. at 43. Scrutinized under an ex post facto lens, the registration obligation was held in Doe v. Poritz to be a regulatory scheme, remedial in legislative intent and effect, and "designed simply and solely to enable the public to protect itself from the danger posed

13

by sex offenders." Id. at 73; cf. United States v. Salerno, 481 U.S. 739, 747 (1987) ("There is no doubt that preventing danger to the community is a legitimate regulatory goal."). Moreover, the Doe Court noted that simply because a regulatory program has "some deterrent punitive impact . . . does not . . . transform those provisions into 'punishment.'" 142 N.J. at 75.

Doe placed the registration scheme decidedly in the nonpunitive category, and ever since it has been treated accordingly by this Court as a civil, administrative consequence for individuals who have been convicted of an eligible sex offense in New Jersey or another jurisdiction and are deemed repetitive and compulsive. See Perez, 220 N.J. at 440 (describing registration as an "administrative obligation"). That the violation of that regulatory scheme is enforced through separate criminal charges when and if the violation occurs does not make the registration requirement itself penal, as Doe recognized. Therefore, the registration requirement survived its initial ex post facto challenge in Doe -- it is not part of the penal sentence for the predicate sex offense.[4]

---

[4] The registration and regulatory scheme also has overcome Double Jeopardy Clause challenges, which use a similar analysis for determining whether registration imposes a "punishment" on an individual. Federal courts have reached the same conclusion that we did in Doe: the law's registration requirements constitute non-punitive civil remedies rather than criminal

14

Distilled to its essence then, registration is retroactive but not punitive. Prosecution for failing to register, however, is different. It addresses a separate crime and is punitive but not retroactive.

Viewed accordingly, just as the Legislature was permitted to affix a criminal penalty for the prospective violation denominated as failure to register, so too may it prospectively enhance the degree of such a penalty. It did not before constitute enhancement of punishment for the original predicate offense, and now, when increased by a degree, it is simply a prospective enhancement of an offense for which defendants had fair notice.

Thus, the legislative increase in punishment that the 2007 amendments prescribed for those subject to Megan's Law's registration requirements who fail to register after the amendments' effective date does not contravene the fair-notice requirement that the prohibition against ex post facto legislation protects -- it does not "increase[] punishment beyond what was prescribed when the crime was consummated." See Weaver, 450 U.S. at 30.

_____

penalties. The Third Circuit held in Artway v. Attorney General that Megan's Law's registration requirements were not punitive for purposes of ex post facto or double jeopardy analysis. 81 F.3d 1235, 1271 (3d Cir. 1996). The court observed that registration "historically is a regulatory technique with a salutary purpose." Id. at 1266. The Third Circuit similarly upheld Megan's Law's notification requirements in the face of ex post facto and double jeopardy challenges. E.B. v. Verniero, 119 F.3d 1077, 1081, 1105-07 (3d Cir. 1997).

15

We add, in closing on this point, that federal cases in the Third Circuit addressing the federal Sex Offender Registration and Notification Act (SORNA), 42 U.S.C. §§ 16901 to 16962, treat similarly ex post facto challenges to failure-to-register offenses by individuals whose original sex offenses predated the federal law's passage.  See United States v. Shenandoah, 595 F.3d 151, 158-59 (3d Cir. 2010), abrogated in other part by Reynolds v. United States, 565 U.S. 432 (2012); see also Pavulak v. United States, 248 F. Supp. 3d 546, 569 (D. Del. 2017) (finding such a conviction lawful).  Other circuits have reached similar conclusions.  See, e.g., United States v. Wass, 954 F.3d 184, 190-92 (4th Cir. 2020); United States v. Felts, 674 F.3d 599, 606 (6th Cir. 2012) ("[C]ircuit courts have consistently held that SORNA does not violate the Ex Post Facto Clause.").  Those cases all rely on the proposition that failure to register is an offense distinct from the original underlying sex offense, which is consistent with the Supreme Court's dicta in Smith v. Doe: "A sex offender who fails to comply with the reporting requirement may be subjected to a criminal prosecution for that failure, but any prosecution is a proceeding separate from the individual's original offense."  538 U.S. 84, 101-02 (2003) (emphasis added).

And, as the State correctly points out in its argument, other state supreme courts also have concluded that failure to register is a separate crime

16

from the original sex offense. See State v. Cook, 187 P.3d 1283, 1290 (Kan. 2008) ("[T]he principles underlying the Ex Post Facto Clause do not apply to protect [a defendant's] failure to register after the amendments became effective."); Buck v. Commonwealth, 308 S.W.3d 661, 668 (Ky. 2010) ("[C]riminal liability for failure to register is prospective and not a punishment for past crimes."); State v. Howard, 983 N.E.2d 341, 348 (Ohio 2012) (holding that the defendant's notice of the increased penalty for failure to register was fatal to his ex post facto claim); State v. Gibson, 182 A.3d 540, 558 (R.I. 2018).

## V.

Defendants' argument, buttressed by the ACLU and espoused both in the Appellate Division decision in this matter and in the earlier decision in Timmendequas, takes its foundation from a body of case law that has considered the ex post facto implications of amendments to other aspects of Megan's Law. The extrapolation from those decisions is misplaced, as we explain.

## A.

Since Doe v. Poritz settled the question of the ex post facto impact of imposition of a registration requirement on sex offenders, including persons whose predicate offenses predated the enactment of Megan's Law, much of our

subsequent examination of ex post facto considerations in connection with Megan's Law has focused on a specific component of Megan's Law, namely the Violent Predator Incapacitation Act, which imposed a term of CSL on individuals convicted of certain sex offenses. See L. 1994, c. 130, §§ 1, 2. Individuals subject to CSL are supervised by the Parole Board and face limitations on their liberty, including requirements of

> approval of their residence, N.J.A.C. 10A:71-6.11(b)(5); approval of any change of residence, N.J.A.C. 10A:71-6.11(b)(5)-(6); and approval of employment and notice of any change in employment status, N.J.A.C. 10A:71-6.11(b)(14)-(15). A defendant under CSL may be subjected to a yearly polygraph examination, N.J.A.C. 10A:71-6.11(b)(21); imposition of a curfew, N.J.A.C. 10A:71-6.11(b)(17); and restrictions on access to and use of the internet, N.J.A.C. 10A:71-6.11(b)(22).
>
> [Perez, 220 N.J. at 437.]

In 2003, the Legislature replaced CSL with parole supervision for life (PSL), a more restrictive post-release regime. L. 2003, c. 267. Unlike CSL, an individual sentenced to serve PSL can be returned to prison without a trial by jury. N.J.S.A. 30:4-123.63. Instead, the Parole Board need only produce clear and convincing evidence of a parole violation at a hearing held by an administrative officer. Ibid.

In Perez, we considered whether the Legislature could retroactively convert an offender's sentence of CSL to a sentence of PSL. Defendant

18

Richard Perez, who was serving CSL as a result of a 1998 conviction, pled guilty to an additional sex offense in 2011. 220 N.J. at 427, 429. Perez was sentenced pursuant to N.J.S.A. 2C:43-6.4, which provides for an enhanced term without parole for "individuals who commit an enumerated offense while serving [PSL]." Id. at 427. The State argued that the enhanced term applied to Perez because the Legislature's change of CSL to PSL was one of form rather than substance. Id. at 432. This Court rejected that argument, holding that the State could not treat CSL and PSL identically because converting individuals from CSL to PSL status retroactively would enhance the punitive consequences of their sentences. Id. at 442. We stressed that both "CSL and PSL were and are intended to be penal rather than remedial post-sentence supervisory schemes." Id. at 441 (citing State v. Schubert, 212 N.J. 295, 314 (2012)). Because the conversion of CSL to PSL worked such consequences as eliminating an offender's opportunity for future parole and placing offenders "in the legal custody of the Commissioner of Corrections," we held that such retroactive enhancement of an offender's sentence violated the Ex Post Facto Clause. Id. at 441-42 (quoting N.J.S.A. 2C:43-6.4).

In a subsequent decision, we were called on to consider amendments to CSL, which still applies to certain sex offenders. In 2013, the Legislature amended N.J.S.A. 2C:43-6.4 so that violation of a condition of CSL,

19

previously a fourth-degree offense, was made punishable as a third-degree offense; the Legislature also compelled a mandatory conversion from CSL to PSL. L. 2013, c. 214, § 4; see also N.J.S.A. 2C:43-6.4(a), (d). In Hester, we held that it violated the Ex Post Facto Clause to impose those heightened sanctions on individuals who began serving CSL prior to enactment of those provisions. 233 N.J. at 385.

The defendants in Hester had each been placed on CSL when violations were punishable as a fourth-degree offense. Id. at 395-96. After the defendants violated the terms of their CSL, they were charged with third-degree offenses under the 2013 amendments to N.J.S.A. 2C:43-6.4. Id. at 385. We first concluded that the defendants' CSL violations should not be viewed as independent crimes but as "violations of the general conditions of their supervised release." Id. at 397. Because CSL's release requirements were "integral parts" of the defendants' sentences, "[t]he punishment for violating those regulatory requirements . . . was established when defendants committed their crimes and received their sentences [of CSL]." Ibid. By enhancing the penalty for violating those requirements, the Legislature had impermissibly sought to "materially alter[] defendants' prior sentences to their disadvantage." Id. at 398. We noted in particular the inequity of changing the terms of an offender's sentence to permit conversion to PSL:

20

> Under PSL, the Parole Board has the authority to simply revoke a defendant's supervised release for a violation of a general condition and bypass the panoply of procedural rights afforded under the criminal justice system, such as the rights to trial by jury and to have guilt proven beyond a reasonable doubt. In Perez, the State conceded "that the almost-universal practice since the enactment of [PSL] is to revoke a defendant's parole and return him to prison" for a condition-of-release violation rather than prosecute him for a crime.
>
> [Id. at 396 (alteration in original) (footnote omitted).]

Accordingly, we held in Hester that increasing the defendants' penalty for violating CSL violated the Ex Post Facto Clause by retroactively "enhanc[ing] the punitive consequences" of their sentences to their detriment, just as it had in Perez. Id. at 398 (quoting Perez, 220 N.J. at 442).

B.

The logic advanced by defendants and amicus, and adopted by the Appellate Division in this matter and in the prior published opinion in Timmendequas, is inconsistent with the foundational reasoning of Doe v. Poritz. Doe recognized the registration requirement as an administrative obligation rather than a penal consequence of the original predicate sex offense; the fact that violations of that administrative obligation are themselves separately punishable does not alter the nature of the obligation itself. Thus, imposition of that obligation did not involve a retroactive increase in punishment for the predicate crime. And, by extension, increasing the penal

21

consequences for a violation of that obligation is similarly distinct from the punishment imposed for the predicate crime.

To the extent that the Appellate Division's analysis in this matter and in Timmendequas is rooted in in the reasoning espoused in Hester, moreover, it fails to account for the key distinguishing feature in that appeal. Hester involved aspects of the application of CSL and PSL. Both are recognized not as administrative obligations, but rather as punitive measures imposed as part of the supervised release of an offender convicted of a qualifying offense. As Perez noted, when comparing CSL to registration, CSL is different in kind because it is punishment for the predicate offense -- the offense that caused the sentence to include CSL. 220 N.J. at 440. And as for PSL, our case law is replete with the acknowledgment that parole is continued punishment for the offense that carries it as part of the sentence, rendering the individual in the continued custody of the Department of Corrections. Thus, in Hester as in Perez, claims of retroactive imposition of punishment related to enhancement of supervised release that was a condition of a sex offense sentence.

In sum, Hester involved a different and distinguishable setting than the one posed here -- an increase in offense degree imposed on prospective violations of the Megan's Law registration requirement.

Finally, the logic espoused by the Appellate Division and the defendants here is further undermined by Riley, in which we considered whether the requirements of the Sex Offender Monitoring Act (SOMA), N.J.S.A. 30:4-123.89 to -123.95, could be applied to an individual whose predicate offenses predated the law's enactment. 219 N.J. at 274. SOMA requires qualifying sex offenders to wear an electronic ankle bracelet that tracks their movements via global positioning satellite (GPS). Id. at 277. Individuals subject to this monitoring were required to ensure that their bracelet was continuously charged, provide advance notice of any out-of-state travel, and report their weekly work schedules to a parole officer. Id. at 276-77. We concluded that the burdens of twenty-four-hour GPS monitoring and the attendant requirements of reporting to a parole officer "clearly place[d] this law in the category of a penal rather than civil law." Id. at 275. Applying the factors set forth in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168 (1963), we noted that SOMA's monitoring regime "looks like parole, monitors like parole, restricts like parole, serves the general purpose of parole, and is run by the Parole Board." Id. at 294. That similarity with parole, which this Court has consistently held to be punitive, see Schubert, 212 N.J. at 308, compelled the conclusion that SOMA was a punitive law subject to the Ex Post Facto Clause, Riley, 212 N.J. at 297.

23

Riley illustrates that Megan's Law registration requirements are not rendered punitive merely because they are policed by penal means. Our focus in Riley was on the punitive or nonpunitive nature of SOMA's GPS monitoring imposed retroactively on certain individuals, not on the unquestionably penal nature of a prospective prosecution for failure to comply with that monitoring. Under the logic of the argument in support of defendants and the decision under review, Riley's conclusion that continuous GPS monitoring is punitive was purely superfluous -- the decision could have rested simply on the fact that the monitoring was policed by punitive means, namely the threat of prosecution for non-compliance. But Riley expressly found that "[t]he constraints and disabilities imposed on Riley by SOMA, and SOMA's similarity to parole supervision for life, clearly place this law in the category of a penal rather than civil law." Id. at 275. And just as the potential prosecution for a SOMA violation was not what rendered SOMA punitive, the potential prosecution for failure to register does not render the registration obligation punitive in its own right.

Review of those cases reveals that Doe is the most relevant to the circumstances present here, and adherence to Doe's determination that registration is not punitive should have precluded reliance on cases dealing

24

with punitive consequences such as PSL, CSL, and SOMA in the context of a challenge predicated on the registration requirement.

C.

For those reasons, we disapprove of the analysis of <u>Timmendequas</u> and reverse the Appellate Division's decision in this matter, which relied on <u>Timmendequas</u> to find an ex post facto violation in the third-degree charges brought against defendants.

In rejecting the arguments pressed on behalf of defendants, we agree with the position advanced by the State that adoption of such a view would raise uncertainty regarding the State's ability to enforce Megan's Law's registration requirements against any offender whose predicate convictions predated the law's passage -- a position clearly understood in <u>Doe</u>. Those requirements have been in place for over two decades, and we are unaware of any support for the proposition that their enforcement against pre-1994 offenders raises ex post facto concerns. <u>See, e.g.</u>, <u>State v. S.R.</u>, 175 N.J. 23, 26 (2002) (noting such a conviction). And, if the Legislature has the authority to create new penalties for noncompliance with administrative obligations, as it did in Megan's Law, it would be incongruous if it could not prospectively upgrade the penalty for violating an existing administrative obligation.

25

## VI.

The judgment of the Appellate Division is reversed.  R.B.'s matter is remanded to the trial court for further proceedings consistent with this opinion's holding.  We reinstate H.B.'s conviction and sentence.


CHIEF JUSTICE RABNER and JUSTICES PATTERSON, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE LaVECCHIA's opinion.  JUSTICE ALBIN filed a dissent.

State of New Jersey,

Plaintiff-Appellant,

v.

Hakum Brown a/k/a Hakeem Brown,

Defendant-Respondent.

_____

State of New Jersey,

Plaintiff-Appellant,

v.

Rodney Brown,

Defendant-Respondent.

JUSTICE ALBIN, dissenting.

"Like cases should be treated alike" is an ancient maxim and a central theme in our modern-day constitutional jurisprudence. The judicial principle to treat like cases alike instructs courts to avoid arbitrary distinctions and fictional labels to distinguish one case from another. That principle is at the heart of this case.

In State v. Timmendequas, in a persuasive and well-reasoned opinion authored by Judge Messano, the Appellate Division determined that, for ex

post facto purposes, retroactively increasing the punishment for a violation of a condition of the Megan's Law registration requirements was no different than what this Court declared unconstitutional in State v. Hester, 233 N.J. 381 (2018) -- retroactively increasing the punishment for a violation of a condition of community supervision for life (CSL). See 460 N.J. Super. 346 (App. Div. 2019). The Timmendequas court did no more than follow the inescapable logic of Hester in applying a like principle to a like case. In this case, the same appellate panel hewed to the holding of Timmendequas and determined that defendants' Megan's Law registration violations were not punishable as third-degree crimes because, at the time of the imposition of their sentences, a registration violation was punishable as only a fourth-degree crime.

I agree with the Appellate Division that to punish defendants as third-degree offenders would violate the Ex Post Facto Clauses of the United States and New Jersey Constitutions. I therefore respectfully dissent.

I.

A.

Defendants Rodney Brown (R.B.) and Hakum Brown (H.B.) both pled guilty to having committed sex offenses and were sentenced to terms of incarceration, R.B. in 1995 and H.B. in 2000. In both cases, trial courts sentenced defendants to CSL and to comply with the lifetime registration

2

requirements of Megan's Law after they completed the custodial portion of their sentences.

At the time of defendants' sentences, a violation of a term of CSL was a fourth-degree offense.  L. 1994, c. 130, § 2.  In 2014, the Legislature upgraded the penalty for a CSL violation from a fourth-degree to a third-degree offense.  L. 2013, c. 214, § 4 (codified at N.J.S.A. 2C:43-6.4(d)).  Also at the time of their sentences, a violation of the Megan's Law registration requirements was a fourth-degree offense.  L. 1994, c. 133, § 2(a).  In 2007, the Legislature upgraded the penalty for failure to register pursuant to Megan's Law from a fourth-degree to a third-degree offense.  L. 2007, c. 19, § 1 (codified at N.J.S.A. 2C:7-2(a)(3)).

In Hester, we declared that the Federal and State Ex Post Facto Clauses forbid subjecting defendants sentenced to CSL before enactment of the 2014 amendment to the enhanced punishment of a third-degree crime for a CSL violation committed after passage of the amendment.  233 N.J. at 385-86.  For ex post facto purposes, we held that the CSL violations in Hester related back to the conditions made part of the defendants' sentences for their sex offenses -- their original "completed crime[s]."  Id. at 392.  We determined that retroactively increasing the punishment from a fourth-degree offense to a third-degree offense violated the Ex Post Facto Clauses.  Id. at 398.

3

Accordingly, the defendants could not be sentenced as third-degree offenders for committing CSL violations under the conditions of their original sentences.

B.

In 2016, both R.B and H.B. were charged not only with third-degree failure to register as sex offenders for not registering with municipal police departments within forty-eight hours of their release from county jails, but also with third-degree CSL violations. No one disputes that, based on <u>Hester</u>, the Ex Post Facto Clauses bar the imposition of a third-degree sentence for the CSL violations. The Appellate Division held that the same result should be reached for the Megan's Law violations because "the 'additional punishment' attached to the registration requirements of Megan's Law, which were 'condition[s] of defendants' sentences,' the '"completed crime" necessarily relate[d] back'" to the earlier predicate sex offenses to which they pled guilty, quoting <u>Hester</u>, 233 N.J. at 392 (alterations in original). The Appellate Division concluded that the 2007 amendment, by increasing the punishment for a violation of a condition of their original sentences from a fourth-degree to a third-degree crime, "materially altered defendant[s'] prior sentence[s] to [their] disadvantage," in violation of the Federal and State Ex Post Facto Clauses. (quoting <u>Timmendequas</u>, 460 N.J. Super. at 354 (alterations in original) (quoting, in turn, <u>Hester</u>, 233 N.J. at 398)).

4

The Appellate Division reached a sensible conclusion because of the many similarities between CSL's regulatory requirements and Megan's Law's registration requirements.

CSL requires an offender to secure the approval of a parole officer before moving into a residence or changing residence. N.J.A.C. 10A:71-6.11(b)(2), (7) to (8). Megan's Law requires an offender to annually register with the local police department his present address and, within ten days before moving to any new residence, any change of address. N.J.S.A. 2C:7-2(d)(1).

CSL requires an offender to secure the approval of a parole officer before accepting employment or changing employment. N.J.A.C. 10A:71-6.11(b)(16) to (17). Megan's Law requires an offender to notify the appropriate law enforcement agency of any change in employment within five days or about enrollment in an institution of higher education. N.J.S.A. 2C:7-2(d)(1).

Both the CSL requirements and the Megan's Law registration requirements are conditions imposed at the time of sentencing for a defendant's predicate sex offense. Both CSL and Megan's Law mandate lifetime compliance. Both CSL and Megan's Law violations are punishable as crimes, subjecting offenders to potential prison terms.

5

Yet, the majority finds that upgrading the penalty for a CSL violation from a fourth-degree offense to a third-degree offense is barred by the Ex Post Facto Clauses but that upgrading the penalty for a Megan's Law registration violation from a fourth-degree offense to a third-degree offense -- carrying a potential prison term of three to five years -- passes constitutional muster. In my view, there is no logical basis, for ex post facto purposes, to distinguish between increased criminal penalties -- that is, penalties beyond those permissible at the time of sentence -- imposed for violations of Megan's Law and CSL. If the Megan's Law registration requirements were folded into CSL or given the name CSL then, presumably, the Ex Post Facto Clauses would protect against the enhanced punishments imposed here. The historical safeguards provided by the Ex Post Facto Clauses surely cannot depend on the name given to conditions imposed as part of a sentence.

## C.

The majority submits that "Megan's Law registration requirements are not rendered punitive merely because they are policed by penal means." Ante at ___ (slip op. at 23). But defendants do not challenge whether Megan's Law registration requirements themselves are punitive; rather, defendants argue that increasing the penalty from a fourth-degree offense to a third-degree offense for failing to comply is punitive.

6

When defendants were originally sentenced to lifetime compliance with Megan's Law registration requirements, failure to register was punishable as a fourth-degree offense, but the 2007 amendment has now increased that penalty to a third-degree offense. Such an increase therefore unquestionably imposes additional punishment to defendants' already completed crimes -- the crimes that subjected them to Megan's Law compliance in the first place.

To evaluate whether the retroactive application of a statute imposes additional punishment in violation of the Ex Post Facto Clauses, a court must assess "whether the Legislature intended 'to impose punishment,'" and if it does find that the Legislature possessed a punitive intent, the inquiry ends. Riley v. State Parole Bd., 219 N.J. 270, 285 (2014) (quoting Smith v. Doe, 538 U.S. 84, 92 (2003)). Increasing a criminal penalty for an offense, as the Legislature did in passing the 2007 amendment, demonstrates a purely punitive intent. Indeed, the Legislature stated that the purpose of the amendment was to "upgrade[] the penalty for failure to register as a sex offender under 'Megan's Law.'" S. Law & Pub. Safety & Veterans' Affairs Comm. Statement to S. 716 & 832 (Jan. 26, 2006); Assemb. Judiciary Comm. Statement to S. 716 & 832 (Oct. 23, 2006).

In disposing of the ex post facto challenge, the majority ultimately relies heavily on Doe v. Poritz, 142 N.J. 1 (1995), asserting that Megan's Law

7

registration is a remedial measure, not a punitive one. Although Poritz ruled

that compelling persons convicted of certain sex offenses to comply with

Megan's Law registration requirements was a remedial measure, id. at 73, the

constitutional propriety of enforcing this remedial legislation through a

criminal penalty was not squarely addressed by the Court.

Rather, in assessing whether the law was punitive or remedial, the Court

evaluated the objective of the registration and notification requirements

themselves. See id. at 73-75. Poritz did not directly focus on whether the

Megan's Law enforcement provision, which at the time made failure to register

a fourth-degree crime punishable by up to eighteen months in jail, was

punitive and violative of the Ex Post Facto Clauses. I agree with the Appellate

Division in Timmendequas that "while the Court in Poritz held the overall

purpose of Megan's Law is remedial in nature, the method chosen to enforce

its registration requirements is not," and that the Legislature in enacting the

2007 amendment intended to increase punishment, which compels an ex post

facto analysis. 460 N.J. Super. at 355. Additionally, as the Appellate Division

noted in Timmendequas,

> many federal and state courts have concluded that
> subsequent amendments to an otherwise constitutional
> remedial registration scheme, which make obligations
> more onerous than when the crime was committed or
> when registration was initially imposed, may result in
> ex post facto violations, even though the amendments

8

did not increase the direct penal consequence for non-compliance.

[Id. at 356.]

If the Legislature increased the punishment for a registration violation to a second- or first-degree crime, would this Court still call the scheme remedial in nature? When considering the constitutional import of a statute, we should call a thing by what it is, not by another name. As the Poritz Court stated, "[l]abels, of course, do not 'immunize [a law] from scrutiny under the Ex Post Facto Clause.'" Poritz, 142 N.J. at 62 (second alteration in original) (quoting Collins v. Youngblood, 497 U.S. 37, 46 (1990)). A remedial statute may not remain remedial when enforced by increased criminal penalties.

Whether the original Megan's Law registration enforcement scheme is penal rather than remedial, however, is not the issue before us. We should not retroactively aggravate the penalty for failing to register, a requirement necessarily imposed as part of defendants' sentences for their predicate sex offenses, to a three-to-five-year prison term based on an arbitrary distinction between CSL and Megan's Law registration.

## II.

In the end, I conclude, as did the Appellate Division in this case and in Timmendequas, that the 2007 amendment increased the punishment for defendants' violation of a condition of their sentences -- the registration

9

requirement -- and therefore materially altered their sentences to their disadvantage in violation of the prohibition on ex post facto laws. <u>See</u> <u>Timmendequas</u>, 460 N.J. Super. at 356-57.

I do not see any basis to treat retroactively imposed increased punishments for violations of CSL requirements and Megan's Law registration requirements differently for ex post facto purposes. I therefore respectfully dissent.